# THE COUNTY OF ST. CLAIR

*v.*

# THE PEOPLE *ex rel.* Philip Keller.

1. MANDAMUS—*not granted when right is doubtful.* The rule is uniformly established, that a relator must show a clear right before relief will be granted by *mandamus.* If the right be doubtful or uncertain the court will not interpose.

2. SAME—*in matters of discretion.* Where the performance of a duty by a public officer is discretionary, and depends upon the exercise of his judgment as to its necessity or propriety, the court will not interfere to determine how or when he shall exercise the power, but will leave him in the free exercise of his discretion, to act as he shall deem proper. Of this character is the power vested in county boards to construct bridges.

3. SAME—*when it lies against public officer.* Where a duty is imposed to perform a specific act and there remains no discretion to be exercised, the writ will generally lie against an officer to compel its performance; but when the duty is general, depending on judgment and discretion, the writ does not lie.

4. BRIDGES—*building, a matter of discretion.* County boards, in counties not under township organization, have the discretionary power to build bridges when they deem the public interest to require them, and the funds of the county will justify the same. This power is beyond the control of the courts.

5. ROADS—*duty to keep in repair.* If county commissioners were to wholly neglect to have the roads in their counties repaired, no doubt they could be compelled to proceed to have repairs made, but not in a specific manner, but to the performance of the duty, generally, under the statute.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. Charles P. Knispel, for the appellant.

Messrs. Wilderman & Hamill, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

This was a petition for a writ of *mandamus*, filed by the People of the State, on the relation of Philip Keller, against the board of commissioners of St. Clair county, to compel them to erect a bridge over Kaskaskia river, at the town of New Athens, in that county.

It is alleged, that the road from Golconda, by the way of Pinckneyville to Belleville, crosses the river at that place; that it is a State road; that the river at that point is 225 feet wide; that the increasing population and business of that vicinity render it necessary to travel across the river at that place; and that for the better enjoyment of their rights by the people, the board of commissioners of the county should construct a free public bridge across the river at that place, to be paid for by the levy of a tax for that purpose; that a bridge costing $10,000 would answer the necessities of public travel; that whilst the board of commissioners have ample power to do so, they refuse to construct the same.

An amended petition was filed, by which it was alleged, that the only mode of crossing the river, at or near that place, was by a private ferry licensed by an act of the General Assembly, the unexpired term of which is thirty years; that the ferry had been out of repair, and the board of commissioners had entered into an agreement with the owner of the ferry to pay him $75 dollars a month to put the ferry in repair, and to pay him for running the same, as the consideration for him to run the ferry regularly, and that he would comply with all the requirements of the law granting him the privilege, as well as all other laws relating to ferries; that if the board should cease to pay that sum the owner would cease to run the ferry, and relator and other citizens would thus be deprived of all means of crossing the river. It is charged that the donation made by the board is unauthorized, illegal and void.

To this petition respondents filed a general demurrer, which was overruled by the court, and a peremptory writ was ordered to issue.    The county appeals.

The rule is well and uniformly established, that a relator must show a clear right before relief will be granted by the court in a proceeding of this character. If the right be doubtful or uncertain the court will not interpose.    Another rule is equally well established, that where the performance of a duty by a public officer is discretionary and depends upon the exercise of his judgment as to its necessity or propriety, the court will not interpose to determine  how or when he shall exercise the power, but will leave him in  the free exercise  of  his discretion, to act or not as he shall deem proper.    These are elementary rules, that have been uniformly applied by courts in this character of proceedings.    Now, is the right clear, and is it the duty of the board of supervisors to construct a bridge as claimed, without the exercise of any discretion?

The county of St. Clair is not under township organization, but has a board of commissioners who transact their business. In counties thus governed, section 142 of the chapter entitled " Roads and  Bridges," requires the county commissioners to cause the road  supervisors through whose district a new road passes, to be notified of its location, and it is made the duty of the supervisors to open and keep the same in repair; but if the labor is not sufficient for the purpose, the county commissioners shall cause the same to be opened at the expense of the county, whenever, in their opinion, the funds of the county will justify the expense.    Section 159, of the same act, imposes the duty on the road supervisors of keeping the roads in their several districts in good repair, and to cause bridges and causeways to be made wherever they shall be necessary, and to keep them in repair.    Section 160 imposes as a duty upon supervisors, the removal of obstructions from the highways in their several districts; " and when any bridge or causeway shall be destroyed or become impassable or dangerous to travelers, it shall be the duty of the supervisor to cause such obstruction to be removed, and to have such bridges or

causeways rebuilt or repaired." But if the means at his disposal shall be insufficient for the purpose, in counties electing to keep up their roads by taxation, and the cost of repairs shall exceed ten dollars, the supervisor shall report the same to one or more of the county commissioners, who shall immediately cause such obstruction to be removed, or such bridge or causeway to be rebuilt or repaired, etc.

Section 179 provides, that "all power, jurisdiction and control is hereby given to the county courts of the several counties, of and concerning State roads located directly by the State, and all other roads, and the same shall be opened, improved and kept in repair as roads in the counties, subject to alteration, change or relocation, as hereinbefore pointed out." Section 180 confers the supervision and control of roads and public highways upon the county courts, in counties not under township organization, and authorizes those bodies to make such rules and regulations as may be necessary to carry the act into proper effect: "*Provided,* that after the election of the commissioners provided for in section 6, article 10, of the constitution of this State, the duties herein provided to be discharged by county courts shall devolve upon and be discharged by the board of county commissioners." Section 47 of the chapter entitled " Counties," provides, that the board of county commissioners shall have general supervision of all highways, roads and bridges of the county, including State roads. These seem to be the only provisions in reference to the construction and repair of roads and bridges in counties not under township organization, which can have any bearing on this case.

A careful examination of these enactments fails to disclose any provision which peremptorily requires the board of commissioners to construct a new bridge, or to do more than rebuild one that had been destroyed, and then only in the manner prescribed by the act. Section 142 imposes no such duty, but simply authorizes the board to open new roads when they shall believe the funds of the county will justify the expense. Even in this, the General Assembly was careful to leave it discretionary with the board.

The 159th section in nowise refers to the board, but simply defines the duty of the road supervisors, and the 160th only requires the removal of obstructions, or the bridge or causeway to be rebuilt or repaired. This does not have the slightest reference to the construction of a new bridge, nor can we believe the General Assembly intended it to apply to the rebuilding of anything more than bridges of comparatively trifling expense. If bridges, costing several thousand dollars to be rebuilt, had been in the contemplation of the law-makers, they would not have authorized one member of the board to have it done, without the concurrent action of his associates. It is unreasonable to believe they could have intended to confer such power in so reckless a manner.

But it is said, that all power and control over public roads is given to the board of commissioners by the 179th section of the Road law; that this clearly makes it the duty of the board to construct bridges. Being their duty they should perform it, and failing to do so, they should be compelled to its performance by *mandamus*. It is not every general duty imposed on a public officer that can be enforced by *mandamus*. The General Assembly is under a solemn duty to pass all needed laws, and to repeal those that are oppressive or operate injuriously upon the people, yet no one, so far as our researches extend, has ever supposed such a body could be coerced to the performance of the duty, nor can the Governor of the State be so compelled to discharge his executive duties. All know that it is the duty of cities and other municipal corporations to enact and enforce wholesome ordinances for the preservation of order within their limits, yet we have found no case where, on their neglect or refusal to do so, they have been compelled by *mandamus*. Hence, the legal proposition is stated too broadly when it is said, that when a public officer or body refuses to perform a public duty they will be compelled by *mandamus*.

Where a duty is imposed to perform a specific act, and there remains no discretion to be exercised, the writ will generally lie against an officer to compel its performance. So of officers associated for the performance of public duties. But where

the duty is not specific but general, depending on judgment and discretion, the writ does not lie to compel the performance of the duty, and clearly not in a specific manner. Where the law imposing the duty upon a municipal corporation makes the performance thereof discretionary by its authorities, a writ of *mandamus* to compel its performance will not lie, but if there is no discretion it is otherwise. See *School Inspectors* v. *Grove*, 20 Ill. 526; *The People* v. *Hilliard*, 29 ib. 413; *The People* v. *Gilmer*, 5 Gilm. 242; *City of Ottawa* v. *The People*, 48 Ill. 233.

Dillon, in his work on Corporations, sec. 673, says: "So where the building of bridges is a discretionary power, intrusted to public corporations, and the proper authorities have, in good faith, decided according to their judgment, *mandamus* will not be issued to compel them to a different course. But a provision in a municipal charter, that the council shall cause the streets to be kept in repair, has been held not to confer a discretionary power, but to enjoin a duty, the performance of which may be compelled by *mandamus.*"

Counties not under township organization are not required to keep the roads and bridges in repair specifically; but if they were, under the enactments to which we have referred they have the discretion as to the mode in which it shall be done. Under such a requirement, it may be that they could be compelled to do so generally, but not specifically. The court would not point out the manner in which the duty should be specifically performed, as that belongs to the corporate body, and not to the court. Had the General Assembly specifically required the board to erect a bridge at this place, and it had refused, then this case would have been similar to some of those cases cited by appellee, but there is no such requirement.

The board has the discretion to build such bridges when they deem the public interest to require them, and the funds of the county will justify the improvement. But of these facts they are the judges, and it is beyond the power of the courts or of other persons to determine that question for them. It

26—85th Ill.

is believed no case can be found, where such a power has been conferred, that a court has undertaken to control its exercise by determining and requiring the municipality shall exercise it in any specific mode.

This case bears no resemblance to the cases referred to, where the road commissioners have surveyed, located and established a road, and had the damages assessed and paid, as there the only act to be performed is to have it opened to public travel. There, it is made the express duty of the road commissioners to open and keep in repair all public roads in their townships. There is no such requirement of the board of county commissioners.  There, the performance of the specific act is required of them, and it fully accords with the practice to coerce them to action by *mandamus*.

It is true the 179th section requires that the roads shall be opened and kept in repair, but it does not, in terms, require it to be done by the county commissioners; and the 180th section provides, that they shall adopt rules and regulations to carry the requirement into effect, which clearly shows that the General Assembly designed them to adopt such measures as they deemed best to keep the roads in repair.  They have the discretionary supervision of the roads, and when they have acted in good faith they have discharged their duty, as required by the statute.  If the county commissioners were to wholly neglect to have the roads repaired, they could, no doubt, be compelled to proceed to have repairs made, but not in a specific manner, but to the performance of the duty generally, under the statute.

The petition showed no ground for granting the relief prayed, and the demurrer to it should have been sustained, and the judgment of the court below must be reversed.

*Judgment reversed.*