THE PEOPLE *ex rel.* The National Cigar Company

*v.*

ROBERT DULANEY *et al.*

*Filed at Ottawa November 17, 1880.*

1. MANDAMUS—*to compel officer to perform an act he is willing to do.* This court will not compel the execution of a contract made by State officers when they admit, in the record, that they are willing to perform the same without coercion. The law will not do a useless thing.

2. SAME—*certainty as to specific act sought to be compelled.* A prayer in a petition for a *mandamus* against the Penitentiary Commissioners, to compel the performance of a contract with them for convict labor, that they be compelled to assign to the relator two hundred convicts of the "kind and quality" called for and specified in the agreement, renders the petition uncertain and indefinite, as it can not be told what specific act is sought to be coerced.

3. SAME—*does not lie to compel the performance of executory contracts.* This court has no jurisdiction by *mandamus* to compel the performance of executory contracts. That is an appropriate remedy to compel public officers to perform specific duties imposed by law, and by it the courts can only compel the performance of specific acts when the duty to discharge them is clear and well defined, and there is no element of discretion involved in the performance.

4. CONTRACT—*construed—when printed part of blank is inconsistent with written part.* Where parties, in attempting to reduce their agreement to form, use a blank form containing a printed paragraph which is entirely inconsistent with a provision written in the blank, and it appears that by inadvertence the blank, as filled, is signed without erasing the printed paragraph, the written provision must control, and will be taken as expressing the real contract.

5. SAME—*for convict labor by Penitentiary Commissioners.* Under sections 25 and 26 of the Penitentiary act, a contract by the commissioners, except a temporary arrangement, is not valid unless made in conformity with the first named section, which requires it to be made upon sealed bids or proposals after the letting of such labor is advertised according to law. A contract for the hiring of such labor, not made in pursuance of the provisions of section 26 of the act, is declared to be temporary only.

6. It is not sufficient that a party desiring to contract for convict labor, authorized his bid to be submitted in due form of law and in due season and at the time required by the statute, but such bid must, in fact, have been submitted at the proper time and place as "a sealed bid' or proposal," before the commissioners will be authorized to act upon the same.

7. STATUTES—*defining the duties of public officers, how construed.* A statute defining the duties of public officers is also a limitation upon the powers they may rightfully exercise. Declaratory provisions of a public law, as to the manner of making contracts by officers designated for that purpose, for and on behalf of the State, are a prohibition on them from making such contracts in any other manner or mode, and the inhibited contracts being without the sanction of law contain no binding obligation.

8. STATE—*can not be sued in any action.* The constitutional provision that the State "shall never be made a defendant in any court of law or equity," prohibits this court from enforcing the performance of a contract made by the Penitentiary Commissioners for convict labor by *mandamus,* as its effect would be to give an action against the State.

This is an application for a writ of *mandamus,* by the National Cigar Company against the Commissioners of the Illinois State Penitentiary at Joliet, to compel the performance

of a contract for the hiring of convict labor.    The material facts appear in the opinion of the court.

Mr. E. F. BULL, and Mr. S. K. DOW, for the relator.

Mr. JAMES K. EDSALL, Attorney General, for the respondents.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This is an original suit in this court.    It is a petition in the name of the People of the State, on the relation of the National Cigar Company, to compel the Commissioners of the State Penitentiary, located at Joliet, to perform a contract or contracts which, it is alleged, relators have with such commissioners for convict labor.

Two contracts are set forth in the amended petition.    One is dated July 12, 1876, and is between the Commissioners of the Penitentiary of the first part, and Ashmond Fox, George A. Head and Aurelius E. Stevens of the second part, and by that agreement the parties of the first part obligated themselves to manufacture, with convict labor, from a minimum of fifteen thousand to a maximum blank number mould made or hand made cigars per day, for each and every day for a term of five years from the date of the contract, and in consideration thereof the party of the second part agreed to pay therefor, on or before the 10th day of each month during the existence of the agreement, for all mould made cigars manufactured during the next preceding month, at the rate of two dollars per one thousand cigars, and for all hand made cigars so manufactured, at the rate of three dollars per one thousand cigars, and to furnish, at their own expense, all foremen and instructors, material and machinery to manufacture such articles.

Substantially, this was the contract between the parties, but the written agreement sets forth, with particular definiteness, what each party was to do and furnish in the performance of the contract.    It will not be necessary to an understanding

of the case, to state the minor matters contained in the agreement. By consent of the acting commissioners, the parties named as the party of the second part afterwards assigned their interest in this contract to the relator—the National Cigar Company—and that company, with their consent, entered upon the further performance of the agreement instead of the original parties thereto.

The second contract is dated December 23, 1878, is between the then acting Commissioners of the Penitentiary and the National Cigar Company, and by its terms obligated the commissioners to furnish the National Cigar Company, for the term of five years, beginning on the first day of January, 1879, with the labor and services of two hundred convicts, to be employed in the manufacture of cigars. It was stipulated in one clause of the agreement, that of the convicts to be employed under this contract, at least forty per cent should be of the average mental and physical capacity, and should have not less than two years' time to serve, provided a sufficiently large number of convicts sentenced for two or more years should be received, to be detailed at the same proportion under other existing contracts.

On the part of the cigar company it was agreed twenty-four cents per day per convict should be paid on or before the 10th day of each month, during the existence of the agreement, for each and every day's labor performed by such convicts in the next preceding month. This agreement, like the former one, provided what each party should do and furnish in its performance.

As respects the first contract, respondents admit its validity and their willingness to perform it, so far as it is practicable for them to do it. Waiving, for the present, the question made as to the jurisdiction of this court to award a *mandamus* to compel the execution of such a contract, there can be no occasion for a writ to compel respondents to do that which they admit, on the record, they are willing to do without coercion. The law will not do a useless thing.

It will be observed the original petition only set up the contract of December, 1878, and asked to have the Commissioners of the Penitentiary compelled to furnish relator with the labor of two hundred convicts of the kind and quality called for and specified in that agreement. The original answer made the question, whether respondents were under any obligation to perform that contract. Two principal reasons were assigned: First, the contract was not written according to the understanding of the parties to it; and second, it was not made in pursuance of any advertised letting of convict labor, as the law requires.

The agreement, as written and executed, contains a clause which provides that all convicts whose labor was to be furnished under the contract should be what "are generally denominated able-bodied men, and of the average capacity of convicts," and should be selected by the warden "with reference to their adaptation to the business of the agreement." No such understanding was within the contemplation of the parties, and the presence of that clause in the written agreement is accounted for in this way:—In attempting to reduce the agreement to form, a blank was used which had a printed paragraph containing the provision cited, and by mistake and inadvertence it was signed without erasing that paragraph. Written in the blank used was this provision: "That of the whole number of convicts employed under this contract a proportion of at least forty per cent shall be of the average mental and physical capacity, and shall have not less than two years' long time to serve." That was the agreement of the parties.

The two provisions are inconsistent. The prayer of relator, as we have seen, is, that the commissioners shall be compelled to assign to relator two hundred convicts of the "kind and quality" called for and specified in the agreement. In this respect the petition is uncertain and indefinite, and it can not be known what specific act is sought to be coerced.

In regard to the other objection made by respondents to executing the agreement of December 23, 1878, they say, in their answer, they were advised no contract for convict labor, except temporary arrangements until there can be a regular letting, is valid unless made in conformity with sec. 25, chap. 108, Rev. Stat. 1874, which makes it the duty of the commissioners to advertise for sealed bids or proposals for the hire of the labor of convicts, in such numbers and for such periods as they shall deem advisable, not exceeding eight years. The 26th section of the Penitentiary act provides that all convicts whose labor is not contracted, as in section 25 prescribed, shall be hired by the commissioners as they shall think most conducive to the interests of the State, but such employment shall be regarded as temporary, to terminate at any public letting. The answer to the original petition contains a most positive denial that the contract of December 23, 1878, was ever awarded to relator at any public letting of the labor of convicts, as required by statute in that behalf, or that the relator ever bid for the labor of such convicts at any public letting of such labor, or ever filed with the commissioners, prior to any advertised letting, a sealed bid or proposal for the labor of such convicts. A statute defining the duties of public officers is also a limitation upon the powers such officers may rightfully exercise. Declaratory provisions of a public law as to the manner of making contracts by officers designated for that purpose for and on behalf of the State, are understood to be an inhibition on such officers as to the making of such contracts in any other manner or mode, and all inhibited contracts being without the sanction of law, contain no binding obligation.

On the filing of the original answer, relator obtained leave of court to amend the original petition herein. It is a noticeable fact the amended petition contains no positive allegation the contract of December 23, 1878, was awarded at any public letting of the labor of convicts in pursuance of any sealed bid or proposal, as required by law. The allega-

tions of the petition in this respect are evasive and uncertain. It is stated that some controversy existed between the commissioners and other contractors for convict labor, and that the commissioners represented to relator they had advertised for sealed bids or proposals for convict labor, as required by law; that such bids would be opened on the 19th of September, 1878, and that if relator would consent to submit a bid for the labor of two hundred convicts at that time, it would save the State a large sum for readvertising and reletting such convict labor to relator, and thereupon, it is alleged "relator did authorize the bid to be submitted in due form of law and in due season, and at the time required by statute, upon the said 19th day of September, 1878, which bid was then considered by said commissioners and afterwards approved by them, and in pursuance thereof another contract was entered into between your relator and the commissioners," which was the contract of December 23, 1878. An analysis of the petition will disclose that, although relator did authorize "the bid to be submitted in due form of law and in due season, and at the time required by the statute," it contains no direct declaration relator ever in fact submitted a "sealed bid or proposal" for the hire of the labor of two hundred convicts at the meeting of the commissioners on the 19th of September, 1878, or at any other time. What bids the commissioners considered and afterwards approved, is not stated. This record will be searched in vain for any direct affirmation the bid for the hire of the labor of two hundred convicts, bearing date September 19, 1878, was in fact submitted to the commissioners as a "sealed bid or proposal" at their advertised session on that day. It is not sufficient relator "authorized the bid to be submitted in due form of law and in due season, and at the time required by the statute," but such bid must in fact have been submitted at the time and place as "a sealed bid or proposal" before the commissioners would be authorized to consider and act upon it.

To the answer to the amended petition, which sets up matters of defence, relator filed a number of special pleas. By stipulation of the parties the first plea shall be construed to read the same as if it had incorporated therein the language of the amended petition to which it refers, in reference to filing bids with the Commissioners of the Penitentiary. The plea, therefore, is no more comprehensive than the petition itself, and that, as we have seen, contains no direct allegation the contract of December 23, 1878, was awarded in pursuance of any sealed bid or proposal submitted at any public letting of convict labor. But it will not be necessary to consider the pleas, as a demurrer was filed to them, which counsel concede may be carried back to the petition, as respondents have declined to join issue on such pleas. This presents fairly the question whether the facts contained in the petition and pleas, which the demurrer admits to be true, make a case that would warrant the issuing of a peremptory writ of *mandamus* as prayed for either in the original or amended petition. Our conclusion is they do not.

The most favorable view that could be taken of the case, admitting that relator had a valid contract with the Commissioners of the Penitentiary for convict labor, would be the concession there had been a breach of such contract. The only relief the law would or could afford relator would be, as in other cases, for breach of contract, and would be such damages as might be recoverable in an appropriate action. The contract of December 23, 1878, if valid, is a contract between the State and relator. The inhibition contained in section 26, article 4, of the constitution, is absolute—the State "shall never be made a defendant in any court of law or equity." Should this court compel the performance of the alleged contract of December 23, 1878, the effect would be to give an action against the State, to compel it to perform its contract, determined in action at law to be valid. It is needless to say this court can not give an action against the State,

when all actions, either at law or in equity, are absolutely forbidden by constitutional provisions.

But the decision may be placed on grounds more nearly affecting the merits of the controversy. As respects the contract of July 12, 1876, the respondents are willing to perform it so far as it may be practicable, and that is all they are obligated to do. There is no demand shown on them to perform this contract. The demand that was made was for the labor of two hundred convicts, and plainly that was under the contract of December 23, 1878, and no reasoning, however subtle, can make it have the remotest application to the contract of July 12, 1876. Relator claimed then that the contract of December 23, 1878, was a new contract, and that the former one would terminate on the 1st of January, 1879, when the new one, by its terms, would take effect. There never was any refusal on the part of the commissioners to perform the contract of July 12, 1876, and whether they failed to comply with it in every particular, as relator understood it, is a matter of no consequence, so far as the present decision is concerned.

Concerning the contract of December 23, 1878, it may be said it was not so fairly obtained as that the commissioners ought to perform it. It was not made in conformity with the statute which prescribes the mode of letting convict labor, and, as we have before stated our views on this branch of the case, it will not be necessary to re-state the reasoning that led to that conclusion.

But there is another and equally conclusive reason why the peremptory writ should be denied in this case, and that is, this court has no jurisdiction by *mandamus* to compel the performance of executory contracts. It is an appropriate remedy to compel public officers to perform specific duties imposed by law; but that is not the case here. The duties which relator asks to have the commissioners compelled to discharge arise out of the alleged contract with them. But for the alleged contract it is not claimed the commissioners

owe relator any duties to be performed. It is only practicable by *mandamus* to compel the performance of specific acts where the duty to discharge them is clear and well defined, and when no element of discretion is involved in the performance. In the case in hand the duties to be coerced, if this writ is allowed, arise out of a contract that requires a series of years for its performance, and must of necessity involve in some degree the exercise of discretion, or, what is the same thing, judgment in the management of the business to which the contract refers. In such cases *mandamus* is not an appropriate remedy.

In *County of St. Clair* v. *The People*, 85 Ill. 396, it was said: " When a duty is imposed to perform a specific act, and there remains no discretion to be exercised, the writ will generally lie against an officer to compel its performance. So of officers associated for the performance of public duties. But when the duty is not specific, but general, depending on judgment and discretion, the writ will not lie to compel the performance of the duty, and clearly not in a specific manner."

The application of the principle of that case to the one under consideration is apparent. The effect of what the court is asked to do is to compel the performance of duties arising out of a contract, and not out of any law imposing any duties on respondents, in regard to anything affecting the interests of relator. The contract being executory, its performance would involve many acts that could not be foreseen or anticipated, as it will require the constant exercise of judgment and discretion.

The peremptory writ will be denied.

*Mandamus denied.*