## The People ex rel., etc.,

### v.

## Chicago West Division Railway Co.

1. MANDAMUS—CONTRACT BETWEEN COMMON COUNCIL AND RAILWAY COMPANY.—Upon a petition by the property owners the common council passed an ordinance authorizing the West Division Railway Company "to extend its line on Ogden avenue to the western limits of the city, said tracks to be laid and in actual operation from Western avenue to the western line of Douglas Park on or before June 1, 1881, and from the western line of Douglas Park to Lawndale, as soon as the same can be constructed, operated and kept in repair without actual loss." The railway company filed with the city clerk its written acceptance of said ordinance, and constructed the line to Douglas Park. Subsequently, upon another petition, the common council passed a second ordinance requiring the line from Douglas Park to Lawndale to be completed within sixty days after notification, etc. A petition for a mandamus was brought to compel the company to construct such line. The company answered and denied that the extension to Lawndale ever could have been or could then be constructed, operated and kept in repair without actual loss. *Held*, that a demurrer to such answer was properly overruled, and the writ was properly dismissed.

2. SAME.—By the passage of the first ordinance and its acceptance by the railway company, a contract was created which in respect to its terms and conditions is to be construed by the same legal rules as are applicable to contracts between private persons, and the common council could not change such contract nor decide the disputed question as to whether the extension could be constructed and operated without loss.

APPEAL from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding. Opinion filed January 6, 1886.

This was a petition for mandamus to compel the Chicago West Division Railway Company to extend its Ogden avenue horse car line from Douglas Park to the city limits, at Lawndale. The material facts are substantially as follows:

July 1, 1880, a majority, by frontage, of the owners of property on Ogden avenue, between Western avenue and the city limits, petitioned the common council to grant permission to said railway company to lay its tracks on Ogden avenue to the city limits; also to pass such ordinance or issue such

order as the council might be legally authorized to do, to compel said railway company to lay its tracks and run its cars upon said extended line without unnecessary delay.

February 7, 1881, the common council passed an ordinance, the first section of which authorized the railway company to extend its line on Ogden avenue to the western limit of the city.

Section two provided as follows :

(1) " Said tracks shall be laid and in actual operation from Western avenue to the western line of Douglas Park on or before the first day of June, 1881."

(2) " From the western line of Douglas Park to Lawndale as soon as the same can be constructed, operated and kept in repair without actual loss."

The railway company, February 23, 1881, filed with the city clerk its written acceptance of said ordinance.

Subsequently, and in July, 1884, appellant Bliss and one other person, on their own behalf and on behalf of the citizens residing in the vicinity of Lawndale, presented a petition to the common council praying for the appointment by the council of a committee to inquire into and report whether the public necessity existed for the extension of said horse railway to Lawndale, and whether the construction of the same was then the duty of said railway company, and whether the said extension could be constructed, operated and repaired without actual loss ; which petition was referred to the judiciary committee of the council for inquiry and report. The committee reported that the extension of the line from Douglas Park to Lawndale could be constructed, operated and kept in repair without loss, and recommended the passage of an ordinance commanding the railway company to make such extension within sixty days.

August 4, 1884, the council adopted the report of the committee and passed the ordinance as recommended, requiring the line to be completed within sixty days after notification of the passage of the ordinance.

The petition for a mandamus alleges the service of a copy of the ordinance upon the company, its refusal to comply

therewith, and prays for the issuance of a writ of mandamus to compel it so to do.

The defendant company answered, admitting the passage of the ordinance, its acceptance of the same, and says it extended its line to the western boundary of Douglas Park as thereby required. Denies that it became its duty to submit to any other terms or conditions than those contained in the ordinance ; denies that the extension of its line from Douglas Park to Lawndale ever could have been, or could then be constructed, operated and kept in repair without actual loss. Says it has no knowledge of the alleged presentation of a petition to the common council relative to the construction of said line from Douglas Park to Lawndale and its reference to a committee; denies that the action of said committee or the order of the council requiring said line to be constructed was binding upon the railway company, etc.

The plaintiff demurred to the answer, assigning various causes which the court overruled, and the plaintiff abiding by its demurrer the writ was dismissed. The plaintiff appealed to this court.

Messrs. C. C. & C. L. Bonney and Mr. L. M. Paine, for appellants; that the passage of the order of the council commanding said extension is a proper exercise of the police power, cited C. & A. Ry. Co. v. People, 105 Ill. 660; Dunne v. People, 94 Ill. 141; Munn v. Ill., 94 U. S. 132 ; Hawthorn v. People, 109 Ill. 311.

Mr. C. Beckwith and Mr. H. S. Monroe, for appellee; that the question as to whether the extension could be constructed and operated without loss could not be decided by the council, cited Commonwealth v. Proprietors of New Bedford Bridge, 2 Gray (Mass.), 339; State v. Noyes, 47 Me. 204 ; Washington Bridge Co. v. State, 18 Conn. 53.

Wilson, J. The defendant company was authorized by its charter to construct a double or single track railway in and along such streets in the west division of the city of Chicago

as the common council might authorize it to do, in such manner and upon such terms and conditions as the council and the railway company might agree upon. By the passage of the ordinance authorizing the railway company to extend its Ogden avenue line from Western avenue to Douglas Park, and thence to Lawndale, and its acceptance by the company, a contract was created, which in respect to its terms and conditions, is to be construed by the same legal rules as are applicable to contracts between private persons. State v. Noyes, 47 Me. 189; Commonwealth v. Proprietors of New Bedford Bridge, 2 Gray, 339; Dartmouth College v. Woodward, 4 Wheaton, 518; Fletcher v. Peck, 6 Cranch, 89; King v. Dedham Bank, 15 Mass. 454.

By the contract the railway company undertook to extend its line from Western avenue to Douglas Park, unconditionally by the first day of June, 1881, and from Douglas Park to Lawndale " as soon as the same could be constructed, operated and kept in repair without actual loss." This latter clause is plain and unambiguous in its terms and it must be presumed was intended by the parties to be as binding as any other provision of the contract. It could not be changed by the common council by adding new provisions or altering those already agreed upon, without the consent of the railway company. As was said in State v. Noyes, 47 Me. *supra*, where the legislature had granted a charter to a railway company conferring certain privileges and imposing certain conditions to which the legislature, by a subsequent act, attempted to add others: " The act of the legislature thus became a contract between the government acting in its sovereign capacity, with the company, founded on the mutual considerations moving from one party to the other. * * The act of incorporation was only a contract between the legislature and the company, but it was a private contract. And this contract is to be construed by the tribunal established for such purposes generally, on the same principles which are to be applied to contracts between private individuals."

The railway company in its answer admitted the making of the contract, but denied that the road from Douglas Park to

Lawndale could be constructed and operated without loss; and the demurrer admitted that this was true.

We have then a case in which it is sought to enforce by mandamus the performance of an executory contract, when it is admitted that the condition upon which the right to have it enforced depends has not happened. The bare statement of the proposition is all that is needed to expose its unsoundness. But if the condition had happened, and the contract to extend the line to Lawndale had become absolute, it does not necessarily follow that mandamus would be an appropriate remedy for a breach of the contract, the use of that writ being limited ordinarily to the enforcement of obligations imposed by law. High on Mandamus, Sec. 321; People ex rel. v. Dulaney, 96 Ill. 503; Wood on Mandamus, p. 18; State v. Zanesville Turnpike Co., 16 Ohio St. 303.

But waiving any question as to the kind of remedy selected we will consider briefly the principal ground upon which the petitioners base their right to have the contract enforced. By the terms of the original ordinance the railway company was not required to extend its road to Lawndale until it could be constructed and operated without loss. The ordinance does not declare who shall decide as to when that contingency has happened. It is contended by the petitioners that this may be done by the common council, and the council having decided that the road can be extended and operated without loss, its decision is conclusive on the defendant company.

It would hardly seem to require argument or authority to show that neither party to a contract can decide disputed questions of law or fact so as to bind the other party without his consent. Such controversies can only be decided by the appropriate judicial tribunals of the country. The common council is not invested with judicial functions; and if it were, it would hardly undertake to abrogate or change the provisions of contracts solemnly entered into between itself and private citizens or business corporations.

In Commonwealth v. Proprietors of New Bedford Bridge, 2 Gray, 339, the charter of the company granted by the legislature contained a provision that the bridge should be erect-

ed "with two suitable draws" to be at least thirty feet wide. By a subsequent act the legislature required the company to construct a new draw to be not less than sixty feet wide; and the question was whether the legislature had the power to decide whether the draws were suitable or not, and whether it could change the terms of the charter as originally granted. It was held by the Supreme Court of Massachusetts in an elaborate opinion, that the charter, when accepted by the bridge company, became a contract between the legislature and the company, and that neither could interpret its terms authoritatively so as to control and bind the rights of the other. The court said " By becoming a party to a contract with its citizens the government divests itself of its sovereignty with respect to the terms and conditions of the compact and its construction and interpretation, and stands in the same position as a private individual." It was further held that the respective rights and duties of the parties to the contract must be determined solely by its original provisions, no power to change or amend the charter having been reserved by the legislature, and that the amendatory act imposing additional burdens on the company, not contemplated by its charter, was without binding force. See also State v. Noyes, 47 Me. *supra*, and cases there cited. Washington Bridge Co. v. State, 18 Conn. 53.

These and numerous other analogous cases which might be cited are decisive of the present case. The second ordinance requiring the extension of the line to Lawndale was without force.

The common council reserved in the ordinance no right to alter it without the consent of the railway company, and no consent was ever given. The contract was created by the first ordinance and acceptance of it by the company. All that the contract unconditionally required of the company has been performed.

It is not perceived that the principle of *ultra vires*, urged by appellant's counsel, is applicable to the facts of the present case. The questions presented in the cases cited by the counsel in support of his position grew out of a very different state of facts, and are not analogous to the case in hand. But if it

were assumed that so much of section two as provided that the tracks shall be laid and in operation from Douglas Park to Lawndale as soon as the same can be constructed, operated and kept in repair without loss, is void, by reason of the absence of any condition to that effect in the petition of the abutting property holders, as is urged by appellants, the conclusion sought to be drawn therefrom is singularly illogical and unjust.

The court is asked to enforce so much of the contract as is for the benefit of the petitioners, and to disregard so much of it as is beneficial to the defendants, thus attempting to use *ultra vires* as both a shield and a sword.   The railway company was not required by its charter to build the road, and if permission is given by the common council to use a street in which to build a road, upon terms and conditions which the company are unwilling to accept, there is no power that can compel it to accept.   The rights, duties and obligation of the respective parties rest in contract, and it would be indeed extraordinary if, having mutually agreed upon the terms and conditions of a contract, one party should be allowed to say to the other, you shall perform the conditions of a contract on your part but I will not perform mine, for I had no power to agree to them.   Such a position is wholly inadmissible.

For the reasons indicated, and others appearing in the record, we are of opinion that the court below properly dismissed the petition, and the judgment is therefore affirmed.

Judgment affirmed.