## Carter H. Harrison, Mayor, v. The People of the State of Illinois, ex. rel. P. J. O'Hare.

### Gen. No. 12,232.

1. PLEADINGS—*when irregularity of, on issues, will be disregarded.* Where the issues on the pleadings are not made up in accordance with the common law or the statute, they will be treated as regular where the parties have so treated them.

2. LICENSES—*mayor's power to revoke.* The city council is empowered by statute to license and regulate the selling of intoxicating liquors; it has power to authorize the mayor to issue and revoke licenses and when the mayor issues or revokes a license he exercises a discretionary power, and is acting as the agent or arm of the council.

3. SALOON LICENSE—*when revocation of, proper.* The revocation of a saloon license is proper because of the conviction of the holder thereof under an ordinance which provides as an additional penalty that the license of the defendant shall be revoked, and this notwithstanding an appeal has been taken from such conviction which remains undetermined.

4. MANDAMUS—*does not lie to review exercise of discretionary power.* Mandamus does not lie to review the exercise of the discretionary power exercised by the mayor in revoking a saloon license.

5. MANDAMUS—*when does not lie.* Mandamus does not lie unless the petitioner shows a clear legal right to the relief prayed for.

Petition for *mandamus.* Appeal from the Superior Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1905. Reversed. Opinion filed February 20, 1906.

**Statement by the Court.** Appellee filed his petition in the Superior Court setting out the ordinances of the city of Chicago in relation to the granting of licenses for keeping dram-shops, and also the ordinances of the former village of

Hyde Park prior to the annexation of Hyde Park to the city of Chicago, and that in September, 1904, he applied for a license to keep a dram-shop at No. 963 East 51st street, Chicago, for the second period of the year expiring December 31, 1904, and a license was issued to him. The petition further avers that in October and November, 1903, he was licensed to and kept a saloon on the first floor of said premises, and that for six years prior thereto he owned a restaurant occupying the entire second floor of said building, with a separate entrance thereto from 51st street, and another from Prairie avenue; that the only connection between the two floors was by a door behind the bar wholly excluded from access by the public; that during the months of October and November petitioner was absent from the United States on a trip to Europe and during his absence detectives and persons employed by the Hyde Park Protective Association, about the 24th day of October, and again about the 12th day of November, 1903, entered petitioner's restaurant by the Prairie avenue entrance; that one of the detectives and a lady stenographer occupied a small dining room and a detective and his wife occupied another small dining room and another detective passed from one room to another to see what was ordered and what was drank.

In March, 1904, warrants were issued for petitioner's arrest for violation of sections 1 and 2 of the ordinance of the city of Chicago passed by the city council on December 9, 1901, which ordinance provides as follows:

" (Section 1) That no person or corporation operating or conducting a saloon or other place in which liquors are sold or given away, shall establish or maintain in connection with such saloon, either as a part thereof, or as an adjunct thereto, any wine room or private apartment, the interior of which is shut off from the general public view by doors, curtains, or any other device; (Section 2) that no person or corporation operating or conducting a restaurant, café, dining room, ordinary or victualing place, shall serve or permit to be served, any liquor in any private apartment which may be maintained as a part of, or an adjunct to such restaurant

or other place, to any number of persons less than four (4), unless all the members of such party be of the same sex; (Section 3) that any person or corporation violating any provision of said ordinance shall be fined not less than Ten ($10.00) dollars nor more than One Hundred ($100.00) dollars, and in addition shall have his, her or its license revoked, and shall not be permitted to again obtain a license within the limits of the City for a period of two (2) years from and after the date of conviction."

That during the July, 1904, term of the Criminal Court of Cook county, a trial was had resulting in a verdict of guilty of a violation of section 1 of said ordinance and the assessment of a penalty of ten dollars and a judgment was rendered on the verdict against petitioner; that petitioner prosecuted an appeal therefrom to the Appellate Court of the First District by filing a bond and bill of exceptions, and the case is pending and undetermined in that court.

In October, 1904, the supposed president of said association demanded of the mayor of said city that he revoke the license of petitioner, and the mayor thereupon after referring the matter to the corporation counsel and receiving his opinion thereon revoked petitioner's license; that petitioner demanded of the mayor the restoration of the license, which was refused.

The petition prays for a writ of *mandamus* against appellant, mayor of Chicago, commanding him to nullify his revocation of said license and restore said license to petitioner.

Appellant filed his demurrer and answer to the petition. The demurrer is general and the answer admits that the ordinances set out in the petition have been in force since December 9, 1901, and sets out that for several years last past certain ordinances relating to liquor licenses have been and are in force known respectively as sections 1165, 1167, 1170 and 1180 of the Revised Code of Chicago, and that said ordinances provide as follows:

" Section 1165 provides that the mayor shall grant licenses to such residents of the city of Chicago as he may deem proper.

"Section 1167, that all licenses shall be subject to the ordinances and regulations which may be in force at the time of issuing thereof, or which may subsequently be passed by the city council; and if any person so licensed shall violate any of the provisions thereof, his license may be revoked in the discretion of the mayor.

"Section 1170, that the mayor shall have power to grant licenses to such persons as in his discretion he shall deem suitable and proper persons to be licensed.

"Section 1180, that any licenses granted under this chapter may be revoked upon written notice by the mayor whenever it shall appear that the parties so licensed shall have violated any provision of any ordinance of the city council relating to intoxicating liquors."

The answer admits the averments of facts in the petition, but denies that petitioner has never before been arrested for or charged in any court with having violated any of the laws of the State of Illinois or ordinances of the city of Chicago relating to the saloon business, and sets up a fine for costs in one case.

An amendment to the answer sets out an express stipulation in relator's license as follows:

"Nevertheless, this license with all the rights under it, is subject to revocation at the discretion of the mayor, and this license, with all the rights under it, shall terminate absolutely upon the notice of such revocation being left at the bar; and the person to whom it is issued shall stand in the same position as if he had not taken out any license."

That relator accepted and acted under said license, subject to the conditions aforesaid, and that respondent has exercised the discretion which was expressly reserved in said license, and in the exercise of such discretion he has deemed it proper to revoke and did revoke relator's license.

It was agreed on the trial that all the material facts sufficiently alleged in the petition should be considered as proved. Respondent offered in evidence sections Nos. 1165, 1167, 1170 and 1180 of the Revised Code of Chicago of 1897 set

out in the answer. Respondent also read in evidence section 1185 of said Revised Code, which is as follows:

"1185. (Prohibited hours of sale — Removal of window shades, blinds and screens — Unobstructed view of bar and room from street.) No person shall keep open any saloon, bar-room or tippling house during the night-time between the hours of one o'clock A.M. and five o'clock A.M. No person, other than employees of such saloon, shall be permitted to remain in any saloon or bar-room between the hours of one o'clock A.M. and five o'clock A.M. All doors opening out upon any street from any saloon or bar-room and all other doors opening out of any saloon or bar-room shall be securely locked at the hour of one o'clock A.M. and shall be kept locked until the hour of five o'clock A.M. All window shades, blinds or screens in any saloon or bar-room shall be raised, opened or removed at the hour of one o'clock A.M. and be kept raised, opened or removed, until the hour of five o'clock A.M., so that a free and unobstructed view of the bar and the interior of any such saloon or bar-room shall be had from the street, and exterior of such saloon or bar-room; all inside screens, doors and partitions obstructing a free view of the bar and saloon from the street shall be removed or opened so that between the hours of one o'clock A.M. and five o'clock A.M. an unobstructed view of the interior thereof shall be had from the exterior; and a light or lights shall be kept burning in the interior of such saloon or bar-room sufficiently illuminating the interior thereof so that a clear view of the bar and entire interior of such saloon or bar-room shall be obtained from the exterior thereof, between the hours of one o'clock A.M. and five o'clock A.M. Any person violating any of the foregoing provisions shall be subject to a penalty of not less than twenty dollars nor more than one hundred dollars for each offense."

It was admitted that relator was on or about April 12, 1904, arrested for a violation of said section 1185 and arraigned before Justice Charleton, by whom he was required to pay the costs.

Respondent read in evidence two opinions of the corporation counsel advising the respondent of the conviction of re-

lator in the Criminal Court for violation of section 1 of the ordinance of December 9, 1901, and of the effect thereof, and also of the effect of relator's appeal to the Appellate Court. Respondent also read in evidence a copy of the printed form of license issued to relator.

The cause was tried before the court without a jury by agreement. The court found the issues with the petitioner and entered judgment awarding a peremptory writ of *mandamus* as prayed.

WILLIAM ROTHMAN, Assistant Corporation Counsel, for appellant; EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel.

M. R. HARRIS, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

Although the issues on the pleadings are not made up in accordance with the common law or the statute, the parties have treated the issues as properly made up, and we will so consider the pleadings.

By the rulings of the Circuit Court on the demurrer and on the propositions of law submitted to the court by appellant, and in modifying and holding certain propositions of law submitted on behalf of the relator, the fundamental question is presented to this court whether the trial court erred or not in substituting its judgment for that of appellant and awarding the writ.

In High's Extraordinary Legal Remedies (3d ed.), sec. 24, it is said: "Stated in general terms, the principle is that *mandamus* will lie to compel the performance of duties purely ministerial in their nature, and so clear and specific that no element of discretion is left in their performance, but that as to all acts or duties necessarily calling for the exercise of judgment and discretion on the part of the officer or body at whose hands their performance is required, *mandamus* will not lie."

Regarding the application of the rule the author says in

the same section: "It applies with special force to cases where the aid of *mandamus* is sought against inferior courts or judges, public officers, municipal authorities and corporate officers generally, and in all these cases it is the determining principle in guiding courts to a correct decision. And whenever such officers or bodies are vested with discretionary power as to the performance of any duty required at their hands, or when in reaching a given result of official action they are necessarily obliged to use some degree of judgment and discretion, while *mandamus* will lie to set them in motion and to compel action upon the matters in controversy, it will in no manner interfere with the exercise of such discretion or control or dictate the judgment or decision which shall be reached."

This principle is sustained in People v. McCormick et al., 106 Ill., 184; Kelly v. City of Chicago et al., 62 Ill., 279; People v. Dental Examiners, 110 Ill., 180.

The power to license and regulate the selling of intoxicating liquors and entirely to prohibit the same if it sees fit is conferred expressly by clause 46 of article 5 of the Act for the Incorporation of Cities and Villages, chapter 24 Hurd's Revised Statutes. The city council may authorize the mayor to issue and revoke licenses. When the mayor issues or revokes a license the city council acts and exercises its power through the mayor. Gundling v. City, 176 Ill., 340; Swarth v. People, 109 Ill., 621.

The power conferred upon the city council "to license, regulate and prohibit the selling or giving away of any intoxicating malt, vinous, mixed or fermented liquor," carries with it or includes the power to annex any condition which it may see fit, and it may impose the condition that a license granted shall be subject to revocation for violation by the licensee of any city ordinance. Schwuchow v. City of Chicago, 68 Ill., 444.

"If the city grants a license, it may impose such conditions and burdens as it may see fit. This latitude of power grows out of the fact that it is discretionary to prohibit the business

or license it on such terms as the city may choose." Launder v. City of Chicago, 111 Ill., 291.

The license issued to the petitioner O'Hare contained the provision set up in respondent's answer.

Sections 1167, 1170 and 1180 of the Revised Code of Chicago, set forth in respondent's answer, provide that if any person licensed shall violate any of the provisions of the ordinances of the city relating to intoxicating liquors, the mayor in his discretion may revoke the license of such person. In Schwuchow v. City of Chicago, *supra,* it was said: "The city had exercised its power to grant licenses on the terms imposed by the ordinances. Appellant saw proper to apply for and obtain a license on these terms. The license contained a condition that if he violated any of the ordinances or regulations or restrictions imposed in the license it might be revoked, even at the discretion of the mayor.

"He received the license on the condition that it might be revoked if he should sell liquor on Sunday and he thereby assented to the terms and conditions. The charter authorized the imposition of the condition and he violated it, and the license was properly revoked." See also Wiggins v. City of Chicago, 68 Ill., 372.

The record shows that petitioner O'Hare was convicted of a violation of the wine room ordinance which expressly provides that in addition to the penalty provided therein the license should be revoked and that such a person shall not be permitted to again obtain a license for two years after the date of the conviction. When the license of petitioner was revoked the judgment of conviction was in full force and effect, except that by the appeal the execution of the judgment was suspended. Moore v. Williams, 132 Ill., 591; People v. Rickert, 159 Ill., 496.

Our conclusions therefore are (1) that the mayor in revoking the license to petitioner was exercising the discretion lodged in him by the ordinances, or in other words the city council through the mayor exercised its discretion and that under the rule above referred to *mandamus* will not lie to compel the mayor to annul his act or the act of the city coun-

cil; (2) that under the conditions of the license and the provisions of the ordinances the mayor could and did revoke the license of O'Hare in the exercise of his discretion in view of the judgment of the Criminal Court against O'Hare.

In our opinion the judgment of the trial court was erroneous for the further reason that the petitioner does not show a clear right to the relief prayed for. This must be shown to entitle the petitioner to a writ of *mandamus*. The People v. McConnell, 146 Ill., 532; County of St. Clair v. People, 85 Ill., 396; The People v. Blocki, 203 Ill., 363.

For the reasons stated the judgment of the Superior Court is reversed.

*Reversed.*