### Peter C. McArdle, Petitioner, Appellant, v. City of Chicago et al., Defendants, Appellees.

### Gen. No. 16,503.

1. CIVIL SERVICE—*increase in salary and volume of work does not constitute creation of new office.* Where the duties of a city cement tester are increased in volume but not in kind together with a raise in salary, which is appropriated and paid for a number of years under the title "One Chief Tester in Charge," this does not constitute the creation of a new office.

2. CIVIL SERVICE—*effect of approval of increased pay roll by commission.* Where the civil service commission approves and certifies the increased pay roll attached to an office without requiring an additional examination, it amounts to a finding that such change in salary did not involve such a change in duties as to require an examination.

3. MANDAMUS—*when demurrer to petition will be overruled.*
Where a petition for *mandamus* shows that the complainant is entitled to some of the relief prayed for, a demurrer thereto will be overruled.

*Mandamus.* Appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed and remanded with directions. Opinion filed August 12, 1912. Rehearing denied June 24, 1912.

MCARDLE & MCARDLE and JOHN A. WATSON, for appellant.

EDWARD J. BRUNDAGE, CLYDE L. DAY and WILLIAM H. SEXTON, for appellee; HERBERT J. FRIEDMAN, of counsel.

MR. JUSTICE GRAVES delivered the opinion of the court.

On May 11, 1908, appellant filed in the Circuit Court of Cook county his petition for a writ of mandamus to be directed to the City of Chicago, its mayor and certain other officers, commanding that he be restored to the honors, duties, responsibilities and emoluments of the office of "Cement Tester" of the City of Chicago, from which office he avers he had been previously ousted. A demurrer was interposed to the petition. Upon a hearing the demurrer was sustained and the petition was dismissed. This is an appeal from that order.

Appellees contend that the petition does not disclose a clear right in the petitioner to have the relief prayed for and that the demurrer was properly sustained.

The following allegations appear in the petition, i. e.:

"That prior to May 23, 1898, the City of Chicago, which is hereby made party defendant hereto, maintained in its Public Works Department a branch or bu-

reau, which was then termed Testing Laboratory, Bureau of Engineering, in charge of one Charles J. Kelly, who enjoyed the title of Chief Cement Tester, and in said laboratory, cements, sands, brick and other building material furnished by contractors on municipal work were subjected to tests to ascertain if they conformed to the terms of contracts and specifications under which they were furnished to the City of Chicago.

"That said Charles J. Kelly held his position as such Chief Cement Tester as a temporary appointee and he had sole charge of the laboratory and had one assistant under him.

\* \* \* \* \* \* \* \* \* \*

"And on or about June 1, 1898, the said Commissioner of Public Works by one H. J. Spengler, Assistant Engineer of Tunnels, assigned your petitioner to the position theretofore held by said Charles J. Kelly as Cement Tester, the said assignment being made by letter, which your petitioner prays may be taken as part hereof and is in the words and figures following:

'June 1, 1898.

Mr. Charles J. Kelly,
        Cement Tester.
Dear Sir:

As per Civil Service certification, the bearer, Peter C. McArdle, is assigned as cement tester to take your place. Will you kindly turn over to him all your records, and other material, and show him every courtesy?

J. H. Spengler,
        Asst. Eng. Tunnels.'

"That your petitioner on such assignment immediately took charge of said laboratory and the one assistant therein employed at the time of said assignment and has ever since until the receipt of the communication hereinafter set forth, of March 12, 1908, from John Ericson, City Engineer, continuously, uninterruptedly and without question from any source, re-

mained in charge of said laboratory and all the tests made therein, and was during all said period the Chief Tester thereof and in charge thereof.

\* \* \* \* \* \* \* \* \* \*

· "That at said last mentioned time (December, 1905) your petitioner filled the highest position in said testing laboratory which was open; that he could achieve no promotion and no higher salary than he had, by any promotional examination under the Civil Service Law and the Rules of the Civil Service Commission.

"That by reason of the work as added from time to time to said laboratory, the labor and responsibility of your petitioner as the person in charge thereof increased and your petitioner was informed of the further contemplated increase and in and about said month of December, 1905, he applied to his superior officers to recognize his increased labor and responsibilities and added professional attainments, as well as his faithful service in said laboratory and the efficiency to which he had brought it, in an increase of salary, and your petitioner having theretofore qualified for appointment to service under the United States of America in support of his request for this recognition, submitted to his superior officers the evidence of his qualifications for such service and also a communication from the Chief Engineer of the Geological Survey, Department of the Interior, United States, offering to your petitioner the position in the United States Service of Cement Expert.

"That the then City Engineer, Commissioner of Public Works and Mayor took the matter under consideration and recognizing the facts aforesaid, on or about December 15, 1905, came to a decision which reduced to writing and signed by the then acting City Engineer, was in writing also approved by the then Commissioner of Public Works and Mayor, which decision is hereby made part hereof and is in the words and figures following, viz:

McArdle v. City of Chicago, 172 Ill. App. 142.

'CHICAGO, Dec. 15, 1905.
J. M. PATTERSON,
    Commissioner of Public Works.

I deem it advisable and practicable to enlarge the work now covered by P. C. McArdle, Cement Tester, Bureau of Engineering, to the extent of adding to his duties which he is now performing the testing of all oils used for pumping machinery, the testing of brass and cast iron castings used in the water works shops, the testing of brick, sand, paints, varnishes, and all other materials that are used in construction, and ultimately instead of hiring inspecting engineers to send to the various shops where machinery is under construction, to send men directly from this Bureau.

I am fully satisfied that Mr. McArdle is fully capable, and has the knowledge to take hold of this class of work, and to make a success of it, and his honesty and integrity are highly recommended. If you approve of this plan it will add to Mr. McArdle's duties and responsibilities, and I recommend that his salary be made $250 per month and arrangement be made at once to carry out the above suggestions.

                    Yours truly,
                        W. A. SHAW,
                        Engineer in Charge.'

"That at the time of the said decision and approvals thereof, there were in full force and effect certain rules of said Civil Service Commission known as Rules II., V. and IX., which were and are in the words and figures following, viz:

'RULE II.

*     *     *     *     *     *     *     *     *     *

Divisions and Grades.

Sec. 5. Change of Compensation: Increasing the compensation of any position in the classified service, whereby the grade of such position as established by the classification is changed, whether done by ordinance or otherwise, shall not affect the tenure of the incumbent of such office or place of employment, un-

less in the opinion of the Commission such changes shall involve a change in duties requiring a different examination.

## Rule V.

Sec. 6. Duties Rather Than Name to Be Considered: In certifying to requisitions, the duties of the position to be filled, rather than the name by which it is called, shall be considered, and it shall be the duty of the Commission to inquire into the requirements of the position for which a requisition has been made and to certify from that list of eligibles which shall, in its judgment, nearest conform to the requirements of the position to be filled.

## Rule IX.

### Reports to be Made.

Sec. 1. Appointing Officers to Report: For the purpose of certification to the Comptroller for the payment of salaries, as required by Section 30 of said Act, and in order that the Commission may keep proper record of changes in the service, each appointing officer shall immediately report to the Commission, as required by Section 13 of said Act:

\* \* \* \* \* \* \* \* \* \*

(c) Every change in the compensation of any officer or employee serving under him.

\* \* \* \* \* \* \* \* \* \*

Sec. 2. Change or Abolition of Office or Compensation: When any office or place of employment is created or abolished, or the compensation attached thereto altered, the officer or board making such change shall immediately report it, in writing, to the Commission.

Sec. 3. Civil List: A list to be known as the Civil List of the City of Chicago, shall be kept in the office of the Commission, to contain the name of every person employed in, or receiving compensation in, the classified service. The list shall show respecting every

officer and employe: The title of his office, the time he has held such office, the time he has been in the service of the City of Chicago, and the places in that service he has filled.

Sec. 4. Payments of Salaries: As provided in Section 31 of said Act, no payment in compensation for services rendered, after the taking effect of these rules, can be made by the City, or any of its officers, to a person holding a position in the classified service until it appears either that he was employed in such position before these rules took effect, or that he has been employed under the provisions of the same, and is holding his position in accordance therewith.'

"That the foregoing rules are all the rules of said Commission bearing upon the subject therein treated, and the statute creating said Civil Service Commission and in force at the time aforesaid, provided as follows, viz:

'Sec. 13. Reports to Commission: Immediate notice in writing shall be given by the appointing power, to said Commission, and all appointments, permanent or temporary, made in such classified Civil Service, and all transfers, promotions, resignations, or vacancies from any cause in such service, and of the date thereof; and a record of the same shall be kept by said Commission. When any office or any place of employment is created or abolished, or the compensation attached thereto altered, the officer or board making such change shall immediately report in writing to said Commission.'

"That in accordance with the provisions of said rules and the said statute in such case made and provided, the appointing officers of the department in which your petitioner held his said *place of employment,* immediately and on or about December 18, 1905, reported in writing to said Civil Service Commission the alterations of the compensation to your petitioner as Cement Tester, viz: Salary increased from $125 per month to $250 per month, on City Engineer's Miscellaneous Roll.

"That at its meeting of the 18th of December, 1905, said Civil Service Commission received said report and spread a minute thereof on the records of said meeting.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"That in each and every appropriation made for said Testing Division since your petitioner's salary was so increased as aforesaid, an appropriation has been made for $3,000 for the the salary for the fiscal year appropriation of your petitioner under the title of 'Chief Tester in Charge.'

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"That all payments made out of said appropriations of $3,000 for the years 1906, 1907 and 1908, for 'Chief Tester in Charge,' up to and including the February, 1908, payment, have been paid to your petitioner, and to him alone, and on his said salary of $3,000 per year, or $250 per month, and never until the occurrence hereinafter set forth has any officer of the City or any other person questioned your petitioner's right to have his said salary of $3,000 per year or $250 per month paid from and out of said sums of $3,000 each in said respective appropriation bills for 'Chief Tester in Charge,' and in each and every payroll from December, 1905, to and including February, 1908, your petitioner's salary at $250 per month has been set off to him under the designation 'Cement Tester,' and the Comptroller of the City of Chicago has during said period honored said payrolls, and they were each duly approved by the Civil Service Commission, and out of said appropriations of $3,000 for Chief Tester in Charge, the City Treasurer has paid your petitioner's said salary on said payrolls.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"That said sum of $3,000 in said appropriation bill of 1908 for 'Chief Tester in Charge,' was expressly inserted therein for your petitioner's salary; that the members of the City Council Finance Committee, when said item was under consideration, were informed and knew that the said item was for your petitioner's said

salary, and for none other; that the City Council when passing, and the Mayor of the City of Chicago when signing said appropriation bill, knew and were and had been publicly informed on the floor of the council chamber that said appropriation was for your petitioner's said salary and for none other.

"That ever since the said 18th of December, 1905, and until the occurrence hereinafter mentioned, the City Engineer has in the monthly payrolls of his bureau set forth your petitioner's monthly salary at the sum of $250 and returned his, your petitioner's title in such payrolls as 'Cement Tester;' that the Commissioner of Public Works has monthly approved said payrolls and your petitioner's salary therein stated, and submitted the same with his approval thereof to the Civil Service Commission, and that said Civil Service Commission has monthly during that period certified the same to the City Comptroller, and the said City Comptroller has at all times during the period last aforesaid, recognized the said appropriation of $3,000 for 'Chief Tester in Charge' as being the fund from which your orator's salary as 'Cement Tester' is payable, and the said City Treasurer has paid his, your petitioner's, said monthly salary from said appropriation of $3,000.

"That there was not in existence at any time during the period covered by the matters herein alleged, either de jure or de facto, any office, in or under the City of Chicago called or known by the name of 'Chief Tester in Charge,' or of any similar designation, nor was there in existence during said period either de jure or de facto any position or place of employment in the official or classified service of the City of Chicago called or known by the name of 'Chief Tester in Charge,' or of any similar designation, nor was there during said period anywhere on the records of the said Civil Service Commission of the City of Chicago the record of any position or place of employment either de jure or de facto, called or known by the title 'Chief Tester in Charge,' or by any similar designation and your petitioner further alleges and charges that when and

wherever said title of 'Chief Tester. in Charge' or any similar title was used in the departments of the City of Chicago and in the records and ordinances of the City of Chicago, it was used exclusively to designate the position of Cement Tester, to which your position had been as aforesaid certified and appointed."

The demurrer admits these averments to be true.

It is inferentially conceded by appellees, and indeed cannot be denied, that the petition sufficiently discloses that the office of "Cement Tester" existed in Chicago as a branch of its Public Works Department, called Testing Laboratory, Bureau of Engineering, from and including 1898, until and including 1908; that it was within the City Civil Service Law then in force in the City of Chicago; that in 1898 petitioner was duly and regularly appointed to that office under the City Civil Service Law and the rules, practices and usages of the City Civil Service Commission, and that he continued to hold and fill that position, at least until December, 1905; that petitioner and his predecessor in office, while in charge of the office of Cement Tester, was, in fact, chief of that laboratory. It is not claimed by appellees that any proceeding, conducted for the ostensible purpose of creating a new or higher position in that department, or in connection with that laboratory, to be known as "Chief Tester in Charge," or of promoting appellee to a new or higher position to be known by that title, was ever had, but it is strenuously insisted by them that the proceedings that took place in December, 1905, by which additional duties were imposed on petitioner and additional compensation was provided for him, and the subsequent proceedings by which appropriations were made in 1906, 1907 and 1908 for a "Chief Tester in Charge," and such funds paid to petitioner, amount, by implication, to the creation of a new position superior to the position of Cement Tester and the promotion of petitioner to such position without a compliance with the

Civil Service Laws and Rules, and that such promotion was, therefore, void.

From the averments of the bill it is manifest that in December, 1905, it was intended by the persons then acting in the premises to increase the duties and pay of petitioner as "Cement Tester," but not to create any new position or to promote petitioner to a new position. It is further manifest that no new position was formally created and no promotion of petitioner was formally made. Before a court can hold that such was the unintentional and inadvertant result of the acts of the parties, such acts must have been of a character to preclude any other construction. Otherwise, the specific and positive averments in the petition that there never was such an office or officer as "Chief Tester in Charge," and that the petitioner from the time he was first made "Cement Tester" continued to be such, and such only until unlawfully ousted in 1908, must prevail.

To promote is, according to Webster's International Dictionary, "To exalt in station, rank or honor; to elevate, raise, prefer, advance." As applied to the Civil Service Laws of New York, the courts of that state have defined the term to mean the advancement of an official or employee to a higher position who had previously been appointed to one of an inferior degree. McGuire v. Byrnes, 70 Hun, 760.

The acts disclosed by the petition, which appellees claim amount to a promotion, are the assignment to petitioner of *additional* duties to perform, the raising of petitioner's salary, and appropriation of the sum of $3,000 for the years 1906, 1907 and 1908 under the title "One Chief Tester in Charge," and the payment of the money so appropriated to petitioner.

The work of the Cement Tester in the Testing Laboratory, when petitioner was inducted into that position, was, as shown by the petition, the testing of cements,

sands, brick and other building materials (not enumerated), furnished by contractors on municipal work, to ascertain if they conformed to the terms of contracts and specifications under which they were furnished to the City of Chicago. The added duties recommended by the engineer in charge were, "the testing of oils used for pumping machinery, the testing of brass and iron castings used in the waterworks shop, the testing of brick, sand, paint, varnishes and other materials, that were used in construction, and ultimately, instead of hiring inspecting engineers to send to the various shops where machinery is under construction to send men directly from this Bureau." So far as the materials to be tested are concerned, there is nothing added. Every one of the materials included in this recommendation, namely, oils, brass and iron castings, brick, sand, paints, varnishes and other materials *that are used in construction* are "building materials" and are included in the list of materials being tested when petitioner first became Cement Tester, namely, "cements, sands, brick and *other building material*," and those not so used were of the same general character as those so used. The difference between the added and the original duties being that the original duties required the testing of only so much of such materials as were furnished by contractors on municipal work, while by the recommendation all such materials used in construction, whether furnished by contractors or obtained from other sources were to be tested by petitioner. The added duties were, therefore, in *volume* and not in *kind* of work. It certainly has never been, and cannot be, held that increasing the *amount* of work to be done by an officer of a given class is a promotion.

It must be conceded that a promotion involves not only the induction of the one promoted into the higher position, but likewise the removal of such one from his former subordinate position, so that it goes with-

out saying that if petitioner was promoted from "Cement Tester" to "Chief Tester in Charge," he was, after such promotion, no longer "Cement Tester."

By Section 5 of Rule II of the City Civil Service Commission, quoted above, it is expressly provided that increasing the compensation of a position shall not affect the tenure of office of the incumbent of such position, *unless* in the opinion of the Civil Service Commission such changes shall involve a change in duties requiring a different examination. The petition in this case shows that after the salary of petitioner was changed from $1,500 to $3,000 per year in December, 1905, this change was duly reported to the City Civil Service Commission under Section 13 of the City Civil Service Laws, and Rule IX of that Commission, above quoted, and that the Commission required of petitioner no other, different or additional examination, but on the contrary, from month to month from December, 1905, to March, 1908, that Commission approved and certified petitioner's pay rolls for $250 per month under the title of "Cement Tester," thereby approving in the most unqualified manner the increase in petitioner's compensation, without requiring the additional examination required if the Commission was of the opinion that such a change in salary involved such a change in duties as to require an additional examination. This amounted to a finding that the Commission was not of the opinion that the change in salary involved such a change in duties as to require such an examination. Such a determination involved the judgment, opinion and discretion of the Commission, and is not subject to review here. County of St. Clair v. People, 85 Ill. 396; Kelly v. City of Chicago, 62 Ill. 279; People v. Dental Examiners, 110 Ill. 180; City of Chicago v. People, 114 Ill. App. 145-155. That being the finding of the Civil Service Commission, it follows that the tenure of office of petitioner as "Cement Tester" was not affected by the

increase in his salary, and that when he was ousted in March, 1908, he was still holding and filling that position.

It is true that for three years an appropriation ordinance was passed including an appropriation of the sum of $3,000 for "One Chief Tester in Charge." The object and office of an appropriation ordinance is to set aside such "sums of money as may be necessary to defray all necessary expenses and liabilities" of the city. An office cannot be filled, created or abolished by an appropriation ordinance. The fact that no appropriation is made to pay the salary of a certain officer of a city might prevent for a time such officer from collecting his salary, but it would in no way affect his tenure of office. Neither would the fact that an appropriation ordinance includes an appropriation for an office that does not exist create such office. We think no inference can be drawn for or against the petitioner in this case from the appropriation ordinances referred to. Neither is the fact that the money appropriated for "One Chief Tester in Charge" was paid to petitioner, significant in determining the question before us, in view of the fact that the averments of the petition show that the appropriation was in fact intended for and paid to him as, and by, the title of "Cement Tester." Chicago v. Luthardt, 191 Ill. 516.

The contention of appellee that there was a promotion of petitioner from the office of "Cement Tester" to the office of "Chief Tester in Charge," by implication or in effect, is not supported either by the isolated or combined averments of the petition. On the contrary, we think the petition clearly shows not only that petitioner was never promoted from the office of "Cement Tester," but that no such office as "Chief Tester in Charge," so called, existed in the City of Chicago during the time in question.

It is further urged by appellees that the petition is faulty because more relief is prayed for than the petitioner is in any event entitled to, and that for that reason the demurrer was properly sustained. Waiving the question as to whether the petitioner can obtain all the relief prayed for, if, in his petition, he has asked for some relief that he has shown himself clearly entitled to, the petition is still good, even though he may have sought some relief he can not obtain. Illinois Watch Case Co. v. Pearson, 140 Ill. 423.

After a careful consideration of the petition in question in the light of the objections made to its sufficiency by appellees, we are forced to the conclusion that it discloses a clear right in petitioner to at least part of the relief prayed for, and that the demurrer to it should have been overruled.

The order of the Circuit Court, sustaining the demurrer and dismissing the petition, is, therefore, reversed and the cause is remanded to that court with directions to overrule the demurrer.

*Order reversed and cause remanded with directions.*