### Peter C. McArdle, Plaintiff in Error, v. City of Chicago et al., Defendants in Error.

### Gen. No. 24,387.

1. CIVIL SERVICE—*what judgment of commission not reviewable on appeal.* Where an applicant for the position of Cement Tester passed the Civil Service examinations and was employed as such officer, and subsequently his salary was increased without additional examination, and the pay rolls showing the officer's salary as "Cement Tester" were approved and certified, it was obvious that the Commission did not think that the increase in salary evidenced any change in duties requiring an additional examination, and it was the judgment of such Commission that the officer still held the position of Cement Tester, which judgment could not be reviewed on appeal.

2. CIVIL SERVICE—*what is effect of additional work required of "Cement Tester."* Where a person appointed as "Cement Tester" with the duties of testing cement, brick, sand and other building material was later required to test oils, brass, cast iron, paints, varnishes and other materials used in construction, the change was only a change in quantity, and there being no change in the qual-

ity of his duties, he remained as the officer designated as "Cement Tester."

3. CIVIL SERVICE—*when demotion of "Cement Tester" does not conform to law.* Where a "Cement Tester" appointed by the Civil Service Commission was notified that another person had been appointed Chief Tester of the Testing Division, and that he should resume his duties as Cement Tester, the demotion was ineffective and not in conformity with the requirements of the Civil Service Law, and although such demotion was reported to the Civil Service Commission and the officer's salary reduced, he still retained the only legal title that he and his office had ever had, which was that of Cement Tester.

4. CIVIL SERVICE—*when limiting of duties of "Cement Tester" is mere subterfuge.* Where the duties of an officer designated as "Cement Tester" were far broader than his title indicated, he being the head of the testing department, and being so recognized by the Civil Service Commission and other officers, the act of limiting his duties to the actual testing of cement, when his department had plenty of work to do and was a large and active laboratory, was a mere subterfuge, and since another person had been appointed Chief Tester, after which the Cement Tester was "laid off," because of lack of work, it was apparent that the laying off was brought about so that his position might be held by others.

5. CIVIL SERVICE—*when "Cement Tester" neither legally demoted nor laid off.* Where a Cement Tester who was in fact the head of a testing department was transferred to another station, his salary reduced, and subjected to unfounded charges before the Civil Service Commission, and where a subordinate was appointed Chief Tester, when there was no such position, the "Cement Tester" being "laid off" for want of work, the facts tended strongly to show an effort to evade the Civil Service Law, enacted to protect honorable and efficient employees from arbitrary ouster, and the Cement Tester was neither legally demoted nor laid off.

6. CIVIL SERVICE, § 30*—*when notice to Commission of reinstatement of "Cement Tester" is without effect.* Where an officer holding the legal designation of "Cement Tester" was demoted by limiting his duties, another person being appointed Chief Tester, and such officer was later laid off for lack of work, a notification sent to the Civil Service Commission that the officer was reinstated as Cement Tester, was without effect, as the office referred to in the notice did not involve the same duties, salary, and standing that the officer formerly held as Tester.

7. CIVIL SERVICE, § 30*—*accomplishment of reinstatement and recovery of salary in single proceeding.* Civil service reinstatement and the recovery of salary may be accomplished in one proceeding.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Error to the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Reversed and remanded with directions with finding of fact. Opinion filed January 24, 1920. Rehearing denied February 14, 1920.

E. J. McARDLE and JOHN A. WATSON, for plaintiff in error.

SAMUEL A. ETTELSON, for defendants in error; GEORGE KANDLIK, HENRY T. CHACE, JR. and HERVEY C. FOSTER, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

An original petition for a writ of mandamus was filed by the petitioner on May 11, 1908, to compel the respondent, the City of Chicago and certain officers thereof, to restore the petitioner to all the honors, duties and responsibilities of Cement Tester as they existed March 12, 1908, and the salary of $250 per month thereto attached. Demurrers were filed by the respondents. They were sustained and the petition dismissed. An appeal was taken to this court and the order, sustaining the demurrers and dismissing the petition, was reversed and the cause remanded with directions. (*McArdle v. City of Chicago*, 172 Ill. App. 142.)

On April 27, 1916, a new petition—containing a few additional allegations—was filed by the petitioner and after answer and issue joined there was a trial without a jury and judgment entered in favor of the defendant. That judgment now comes before us for review on a writ of error.

The record shows the following: As a result of a requisition by the Commissioner of Public Works of the City of Chicago upon the Civil Service Commission for the name of a person eligible for appointment to the position of Cement Tester from a classified list

of the Commission, the petitioner and certain others, on April 7, 1898, took a Civil Service examination for the position of Cement Tester at a salary of $125 per month. The petitioner received the highest marks and on June 1, 1898, was duly classified as Cement Tester, Public Works, Class A, Division 1, Grade 5, and certified by the Civil Service Commission to fill the position of Cement Tester held by one Kelly, a temporary appointee, and, thereupon, assumed the duties of that position at the laboratory in the Chicago avenue pumping station, testing cement, brick, sand and other building materials. When he began he had one assistant named Bailey. From time to time, as the testing work increased, other assistants were given him until there were altogether seven, subject to his orders and supervision. The testing involved a great variety of building and construction materials, besides cement.

The plaintiff held that position at a salary of $125 per month for a period of about 7 years, or until 1905, when the acting city engineer requested him to take charge of the testing of other materials and told him the laboratory would be called "The division of Testing and Inspection" and that in increasing the duties of the office the plaintiff would get an increase in salary. In accordance with that conversation on December 15, 1905, one Shaw, Engineer in Charge, wrote to J. M. Patterson, Commissioner of Public Works, as follows:

"I deem it advisable and practicable to enlarge the work now covered by P. C. McArdle, Cement Tester, Bureau of Engineering, to the extent of adding to his duties which he is now performing the testing of all oils used for pumping machinery, the testing of brass and cast iron castings used in the water works shops, the testing of brick, sand, paints, varnishes and all other materials that are used in construction, and ultimately instead of hiring inspecting engineers to send to various shops where machinery is under construction, to send men directly from this Bureau.

"I am fully satisfied that Mr. McArdle is fully capable and has the knowledge to take hold of this class of work, and to make a success of it, and his honesty and integrity are highly recommended. If you approve of this plan it will add to Mr. McArdle's duties and responsibilities, and I recommend that his salary be made $250.00 per month and arrangement be made at once to carry out the above suggestions."

On December 18, 1905, the Department of Public Works reported in writing to the Civil Service Commission that the salary of the petitioner as Cement Tester had been increased from $125 to $250 per month. On December 18, 1905, the Civil Service Commission received that report and entered it in their records. That was done pursuant to Rule II of Section V of the Civil Service Commission, which is as follows:

"Sec. 5. Change of Compensation: Increasing the compensation of any position in the classified service, whereby the grade of such position as established by the classification is changed, whether done by ordinance or otherwise, shall not affect the tenure of the incumbent of such office or place of employment, unless in the opinion of the Commission such changes shall involve a change in duties requiring a different examination."

And pursuant to Rule IX: All the appropriations for the salaries of the petitioner and his assistants prior to December, 1905, were paid from a fund styled "Engineering and Inspection," and after that time the appropriations were charged to the "Testing Division Bureau of Engineering Department of Public Works." In the latter part of 1905 the name of the laboratory or engineering bureau was changed to "Testing Division" Bureau of Engineering. The petitioner was known and described by the officials of that department by various titles such as "Chief Tester in Charge," "Chief Tester," "Chief of Testing Division," "Engineer in Charge of Tests" and "Chief Testing Engineer," although his civil service classified

official title still remained that of "Cement Tester." In all the appropriations made by the City Council for the petitioner's salary for the years 1906, 1907 and 1908 he was given the title of "One Chief Tester in Charge" at a salary of $3,000 per annum, and was during that time the chief tester and in charge of the testing division, and was so recognized by the City Engineer, the City Comptroller and the City Treasurer and the Civil Service Commission.

In February, 1908, the question of reducing his salary to $125 per month was brought up before the Finance Committee of the City Council and the reduction recommended. Just prior to that, on February 7, 1908, one Erickson, City Engineer, sent for the petitioner and told him that Redesky, Deputy Commissioner of Public Works, had requested the petitioner's resignation and stated further, that if not acceded to, charges would be presented against him. The petitioner in that conversation told Erickson that he knew of no reason why he should resign and that he would not resign. The petitioner testified that at that conversation Erickson told him that he did not know of any charges that could be brought against him; that his work had always been satisfactory. On the trial in the present cause, Erickson testified that he attended to the efficiency reports on the petitioner and that they were very good, and it is conceded by counsel for the city that the petitioner was efficient. It is the evidence of Watson, associate counsel for the petitioner, that in September, 1909, in conversation with Hanberg, Commissioner of Public Works, the latter told him that he had no criticism to make concerning the petitioner as to his fitness to perform the duties of his office. Also, the witness Finn, who was a member of the City Council from 1900 to 1910 and a member of the Finance Committee, stated that when the appropriation bill of 1908, containing an item of "One Chief Tester in Charge, $3,000.00" came up for discussion, he asked Erickson if the testing division did satisfac-

tory work; that Erickson stated it did and that there was no complaint as far as he knew; that the item of $3,000, however, by a majority vote was changed upon the request of Hanberg; that he made the fight on the ground that the petitioner was a worthy and efficient employee and it would be a poor recompense for good service if for any reason, political or otherwise, such a man were let go.

Judge Dever testified that in 1908, when he was a member of the City Council, a heated contest concerning the reduction of the petitioner's salary and an effort to demote him, took place; that it was stated on the floor of the council that his salary was reduced because of his efforts to compel certain persons who had contracts with the city to comply with the conditions and terms of their contracts.

On March 12, 1908, the petitioner was notified in writing by Erickson, the City Engineer, that one Parkes had been appointed to the position of "Chief Tester in Charge of the Testing Division" and that the petitioner should resume his "former duties as cement tester of the testing of cement at the Chicago Avenue pumping station."

It is admitted by counsel for the City that Parkes, appointed by the City Engineer as "Chief Tester," took the petitioner's place and "performed the duties and work previously discharged by" him. Parkes took possession of his desk, etc., in the City Hall, where the testing division was located, and the petitioner, thus demoted, was sent to the Chicago avenue pumping station, and was thereafter, though working under protest, under the supervision and direction of Parkes. Parkes was then called "Chief Tester." On March 13, 1908, the Commissioner of Public Works made a report in writing to the Civil Service Commission that the plaintiff's salary was reduced from $3,000 to $1,500 per annum. From March 12, 1908, to September 9, 1909, he was paid $125 per month instead of his full

salary of $250 per month. Having reported to the Chicago avenue pumping station pursuant to the letter of March 12, 1908, he worked there, but under protest, until finally laid off September 9, 1909. On March 16, 1908, the petitioner wrote to Erickson, the City Engineer, in answer to the letter of the latter of March 12, 1908, that he was unable to understand how he could assume his former duties as Cement Tester, when, as a matter of fact, he had never given them up; that from June, 1898, to February 1908, his office had but one title, viz., Cement Tester, and that his compensation was provided for and recognized by the city officials and the Civil Service Commission in the appropriation under the head of "Chief Tester in Charge." That letter contained also the following:

"I wish to repeat respectively that I stand ready to perform the duties of the office to which I have given almost ten of the best years of my life, and to give to them the fullest and most conscientious efforts; claiming, as I respectfully do, at your hands and through you, as my superior, at the hands of all other City Officers, the right not alone to the emoluments appropriated, as you know, for me by the City Council, but also the honor, duty and responsibility of conducting the tests of all materials heretofore submitted to my division for test and reports."

On March 24, 1908, he received notice from Parkes that he was suspended pending charges preferred before the Civil Service Commission. The hearing was held before the Commission and it was decided that the charges were not sustained, and the petitioner was, accordingly, completely exonerated.

Finally, on September 7, 1909, the petitioner was notified that on account of lack of work he was "laid off" or discharged. There was no one with the title of Cement Tester after February, 1909. Parkes testified that he discharged the petitioner as a result of a communication from the City Engineer to dispense with the services of all employees that were not neces-

sary to carry on all the work.   Parkes served as head of that division until January, 1913.

Some years later, on February 4, 1914, the petitioner received notice that he had been reinstated to his "former position of Cement Tester" and to report to one George A. Schilling, President of the Board of Local Improvements.   That position he rejected for the reason, and it is not denied, that it was not in the Testing Laboratory Bureau of Engineering, nor in the Department of Public Works; that it was not in the same grade; that it did not include the same duties nor did it carry the same salary as his former position.

At the close of the evidence the petitioner presented thirty-four propositions of law of which seven were allowed and the rest rejected.   The cause was tried without a jury and on January 4, 1908, a judgment was entered in favor of the respondent and against the petitioner.

In determining the matters involved, it is necessary to consider, (1) the title to his office; (2) his duties; (3) his demotion; (4) his being "laid off"; (5) his salary.

As to his title of Cement Tester:   Considering the principles announced in *McArdle v. City of Chicago, supra,* we are of the opinion that the petitioner after taking his Civil Service examinations for Cement Tester and receiving the highest marks and being employed by the City of Chicago on June 1, 1898, became an officer of the City of Chicago, and that his office was properly designated as "Cement Tester."   He was classified by the Civil Service Commission, "Department of Public Works, Class A, Division 1, Grade 5." The evidence shows that when in December, 1905, the salary of the petitioner was increased from $125 to $250 per month, a report of that change, pursuant to the requirements of the Civil Service Law, was made to and duly approved by the Civil Service Commission; and that thereafter not only did the Commission not require an additional examination but from De-

cember 5, 1905, until March, 1908, both approved and certified the regular pay rolls, each of which showed an item of $250 per month to be paid to the petitioner under the specific title of "Cement Tester." Obviously it was the judgment of the Civil Service Commission that the increase in salary did not evidence such change in the duties involved as would require an additional examination and that the petitioner still held the office of Cement Tester. That judgment of the Commission we are not entitled to review. *City of Chicago v. People*, 114 Ill. App. 154. As said by Mr. Justice Graves in *McArdle v. City of Chicago, supra:* "That being the finding of the Civil Service Commission, it follows that the tenure of office of petitioner as 'Cement Tester' was not affected by the increase in his salary, and that when he was ousted in March, 1908, he was still holding and filling that position."

As to his duties: When the petitioner was certified and appointed as Cement Tester, he went to work in the laboratory at the Chicago avenue pumping station. His duties then were "testing cement, brick, sand and other building material."

The petition recites that, at that time, in the laboratory, "cement, sands, bricks and other building material furnished by contractors on municipal work were subjected to test to ascertain if they conformed to the terms of contracts and specifications under which they were furnished." Those allegations are not denied. Erickson, the City Engineer, testified that Kelly, who was a temporary appointee and whose place the petitioner took, originally made reports to him as the chief of that division, and, evidently, the petitioner, in succeeding him, undertook that work—making tests —and, as chief of that division, reported to the City Engineer. It is the testimony of the petitioner himself, and it is not contradicted, that his work, when he first took the position, was that of testing "cement, brick, sand and other building materials," and, further, that whenever any further help was required in

the laboratory or in the testing division, as it was afterwards called, men were assigned to the petitioner by the City Engineer, and that from March, 1908, there were from six to eight employees working under his direction.

In December, 1905, his work and the work of his department through the action of the City Engineer and the Commissioner of Public Works was enlarged so as to include the testing of oils, brass, cast iron, brick, sand, paints, varnishes and other materials used in construction; that, however, was only a change in quantity; as the court said in *McArdle v. City of Chicago, supra,* in considering the same matter: "The added duties were therefore in volume and not in kind of work." The evidence shows that from the time the petitioner was originally classified and certified to his position no change had taken place in the quality of his duties nor in the name of his office. We are of the opinion, therefore, that in March, 1908, the petitioner still held the office of Cement Tester and was, entitled to the salary of $250 per month.

As to his demotion: When on March 12, 1908, the petitioner was notified by Erickson, the City Engineer, that Parkes had been appointed to the position of "Chief Tester in Charge of the Testing Division" and that the petitioner should resume his "former duties as Cement Tester of the testing of cement at the Chicago avenue pumping station," that could not have any legal effect in demoting the petitioner from the position that he had held so many years because it was not in conformity with the requirements of the Civil Service Law; and although the attempted demotion was reported to the Civil Service Commission and from March 12, 1908, until September, 1909, the petitioner's salary was reduced to $125 per month, it must be observed that the petitioner, although he continued to work, did so under protest, and as said by the court in *McArdle v. City of Chicago, supra,* "when he was ousted in March, 1908, he was still holding and filling

that position," that of "Cement Tester." Parkes was put in his place, and he was sent back to the Chicago avenue pumping station still retaining, however, in the eyes of the law, the only legal title he and his office had ever had, that of Cement Tester. Of course, the attempted demotion failed.

As to his being "laid off": The chief contention of counsel for the respondent is that petitioner was "laid off" because there was not sufficient work to do. The trial judge evidently being of the opinion that all the work, the petitioner was officially engaged to do, was encompassed in the mere testing of cement, refused nearly all the evidence that was offered to show that at the time of the petitioner's removal there was plenty of testing work to be done, that is, of the same character as that which the petitioner had been doing as Cement Tester for many years. It is not claimed by the respondent that there was not plenty of work in the laboratory; such work as had regularly been done by the petitioner before he was demoted. If the petitioner had been merely a Cement Tester and all his work consisted of simply testing cement and that only, the evidence of Erickson, Marsh and Roach would be sufficient to show that it was proper to lay him off. But we are of the opinion that the duties of the petitioner as Cement Tester were far broader than that. He was the head of the testing department and for many years had been recognized by the Civil Service Commission, the City Engineer, the Comptroller and the City Treasurer, as the Chief Tester. To allow the City Engineer and the Commissioner of Public Works arbitrarily to limit his duties merely to the actual testing of cement and to consider his office as described by a narrow technical interpretation of the words "Cement Tester" would be to sanction an obvious subterfuge. The evidence shows that the department, in which he had worked so long, still had plenty of work such as he had been accustomed to do and was still a large and active laboratory. Obviously, Parkes had,

in some measure, supplanted him and was doing some of his work, and the demotion and laying off of the petitioner were brought about, not by the abolition of the office, not by reason of lack of work, but in order that his place might be used for others. *People ex rel. Jacobs v. Coffin,* 282 Ill. 599; *City of Chicago v. Mc-Nally,* 117 Ill. App. 434. The notification to the petitioner of his transfer to the Chicago avenue pumping station, the reduction of his salary, the institution of unfounded charges against him before the Civil Service Commission, placing Parkes in the position of chief tester when there was no such position, either *de jure* or *de facto,* and then notifying him through Parkes—legally one of his subordinates—that owing to lack of work he was discharged or laid off, tends very strongly to prove a premeditated effort to circumvent and evade the Civil Service Law. One of the chief purposes of the Civil Service Law is to protect honorable and efficient employees from arbitrary ouster. The method of dismissal is as important as that of selection and appointment. If it may be determined by the mere necessities of political power, then the virtues of Civil Service are easily and ignominiously destroyed. We are of the opinion that the petitioner was neither legally demoted nor laid off.

The notification some years later in February, 1914, sent to the secretary of the Civil Service Commission, that he had been reinstated to his "former position of Cement Tester" and that he should report to the President of the Board of Local Improvements, is entirely negligible. The office referred to in the notice was certainly not the former position of the petitioner nor did it involve the same duties, salary and department standing as that which he formerly held as Cement Tester. Of course, to request him to accept a position entirely different from that which he had formerly occupied and then, upon his failure to accept, charge him with a refusal to go back to his regular work, is illogical and of no legal import, whatever.

As to his salary: It is now the law that civil service reinstatement and the recovery of salary may be accomplished in one proceeding. In *People ex rel. Blachly v. Coffin*, 279 Ill. 401, Mr. Justice Dunn said: "No obstacle exists to the granting of complete relief in one proceeding. The right of the defendant in error to his salary is as clear as his title to the office."

The judgment is reversed and remanded with directions that a peremptory writ of mandamus be issued to restore the petitioner to the office or position from which he has been illegally removed and for the further relief as to salary, as prayed for.

*Reversed and remanded with directions with finding of fact.*

Finding of fact: We find as facts that in June, 1898, the plaintiff, pursuant to the Civil Service Law, became Cement Tester for the City of Chicago at a salary of $125 per month, which was subsequently raised to $250 per month; that the office still exists and at no time since June, 1898, has there been a lack of work in that office; that no one but the plaintiff has ever been certified or appointed to the office of Cement Tester; that of his salary of $250 per month from March 12, 1908 to September 6, 1909, the plaintiff received $125 per month, and of the salary of $250 per month from September 6, 1909, to date he has received nothing; that all the material allegations of the amended petition, filed pursuant to the order of April 17, 1916, and the amendments thereto are true.