# STATE OF MISSOURI ex rel. JAMES W. RAWLINGS, Respondent, v. KANSAS CITY, et al., Appellants.

In the Kansas City Court of Appeals, March 5, 1923

1. **MUNICIPAL CORPORATIONS: Civil Service: Civil Service Laws Governing Tenure of Positions Held by Employees, Are for the Good of the Public Service.** Civil Service Laws governing the tenure of positions held by city employees, are for the good of the public service.

2. **———: ———: In Deciding Whether City Employee Was Discharged in Violation of Civil Service Regulations, Court Must Look to Real Substance of What Was Done in Ousting Employee from His Position.** In deciding whether a city employee was discharged in violation of civil service regulations, no slavish subjection to mere form must be adhered to, but after it has been once ascertained that the employee was the holder of the position, the tenure of which is under the protection of Civil Service Law and in question, then the real substance of what was done in ousting him therefrom should be looked at to see whether or not the law has been violated.

3. **———: ———: Statement of Discharging Officer to Employee Seeking Reinstatement, That He Was Discharged for Political Reasons, Stands as True Reason for Discharge Where no Attempt Was Made to Show Contrary.** Where an appointing and discharging officer, subject to civil service regulations, informed discharged employee seeking reinstatement, that he was discharged for political reasons, his statement with reference thereto stands as the true reason when no attempt was made in any way to show it was not the real reason or that there was any other valid reason.

4. **MANDAMUS: Relator Must Show Legal Right to That Which He Asks, Else Fail in His Suit.** In mandamus relator must show a legal right to that which he asks, else he must fail in his suit.

5. **———: Evidence: Presumptions: General Rules and Principles Relative to Admissibility and Weight of Evidence Apply in Mandamus the Same as in Other Suits.** The general rules governing presumptions and ordinary principles relative to the admissibility and weight of evidence apply in mandamus the same as in other suits.

6. **———: ———: ———: Municipal Boards and Officers Presumed to Have Properly and Regularly Performed Their Duties.** The

presumption is that municipal boards and officers properly and regularly perform their duties.

7. MUNICIPAL CORPORATIONS: Civil Service: Examination: Action of Civil Service Board in Approving Payrolls with Employee's Name Thereon, as Deputy Assessor of Water Rates, Held to Amount to a Finding That no Examination Was Required for That Position. The action of Civil Service Board in approving payrolls with relator's name thereon as deputy assessor of water rates, although he was originally employed by city in position known as assistant chief inspector of new plumbing, and did not take any subsequent examination, holding such office as deputy assessor amounted to a finding that no examination was necessary in order to promote him from assistant chief to deputy assessor, which required performance of same duties.

8. ———: Civil Service Examination Held Unnecessary Where Employee Entered Service of City as Assistant Inspector, in Order to promote Him to Position as Inspector of New Plumbing Which Required Performance of Same Duties. Where relator, a city employee, under civil service regulations, was performing, under his title of new plumbing inspector, the same duties as were required in his former position as assistant inspector, in which capacity he entered the employ of the city, and his proficiency and fitness, as well as his entrance upon the assistant position was already proven and certified to, no reason for an examination existed in order to promote him from assistant chief to chief inspector.

9. ———: Civil Service: Civil Service Board Has Wide Discretion with Regard to Performance of Its Duties and Courts Should Not Interfere with Its Method of Doing Things, Unless Its Members Abuse Their Discretion or Act Illegally. Civil Service board has a wide discretion with regard to manner of performing its duties, and exercising its powers, and courts should not interfere with its method of doing things unless members thereof clearly abuse their discretion or act illegally.

10. ———: ———: Officers and Employe's Promotion Held in Accordance with Civil Service Law, and His Appointment to Higher Position Did Not Require an Additional Examination, or Any Act upon His Part to Entitle Him to Hold Position, His Only Duty Being to Obey Orders. Where city employee under civil service who was not only capable and efficient, but already, as assistant inspector, performing the duties acceptably and well of that of chief inspector of new plumbing. the advancement of employee by water board and approval thereof by Civil Board to position of chief inspector, without additional examination, was in accordance with Civil Service Law, and it was not incumbent upon employee

to do any act to entitle him to hold the higher position, his only duty being to obey orders.

11. ———: ———: ———: **Promotion: Under Evidence it Will be Presumed That Promotion of Employee from One Position to Another Was Authorized.** Under charter of Kansas City, where Assessor and Collector of Water Rates was empowered to appoint employees under him as the Fire and Water Board authorized, it will be presumed that, when the assessor directed relator, then assistant inspector, to assume performance of duties of higher office of chief inspector, the Fire and Water Board authorized such act to be done, especially where Fire and Water Board and Civil Service Board afterward acted as if such was the case.

12. **EVIDENCE: Relator's Testimony That He ''Assumed'' Office When ''Directed'' to do so, Held Not an Admission That He Assumed Office Without Authority.** The fact that relator testified he "assumed" the office to which he was promoted when "directed" to do so, *held* not an admission that such was a mere assumption without authority.

13. **MUNICIPAL CORPORATIONS: Civil Service: Officers and Employees: Removal: Notice: Power to Remove Must be Strictly Pursued; Employee Before Removal Held Entitled to Written Statement of Reason for Removal, and to be Notified and Heard With Respect Thereto.** Even though Civil Service Law in charter provides heads of departments can remove without cause, and are not required to give reason for removal to dismissed employee, *held* the power to remove must be strictly pursued, a written statement of the reason for removal must be given, and employees removed for cause are entitled to be notified and heard.

Appeal from the Circuit Court of Jackson County.— *Hon. Thad B. Landon,* Judge.

AFFIRMED.

*John I. Williamson* and *Park & Brown* for respondent.

*John B. Pew* and *George Kingsley* for appellant.

TRIMBLE, P. J.—Relator seeks, by mandamus, to compel the proper authorities of Kansas City to restore him to, and pay him the salary of, a position he

held in the water department, under the city charter's Civil Service Law. The trial court found for him, and, on October 15, 1921, issued the peremptory writ commanding that he be restored to his position and paid the salary thereof from June 15, 1918, the date he was discharged, to the date of his restoration. The city and its authorities at once appealed.

Relator, from fourteen years of age, had worked as helper in a plumbing shop. He became a journeyman plumber at nineteen and at twenty-four he was the Inspector of Plumbing in the National Waterworks Company, the then owner of the waterworks of Kansas City and was the only Inspector of Plumbing the company had. Upon the city's purchase of the waterworks in September, 1895, relator moved his office to the city hall and continued there in the same position he had held before. On or about June 1, 1911, his position was called "Inspector of New Plumbing" and on June 24th of that year he took the civil service examination for that position receiving a grade of 96.4 per cent which gave him first rank, and his name was certified for appointment, and he was duly appointed, under the civil service regulations, to said position at a salary of $1020 per year, and in which he performed the same duties as before.

Afterwards, the Board of Fire and Water Commissioners, pursuant to section 3, article 11 of the Charter of Kansas City, created the position of Assistant Chief Inspector in the inspection division of the waterworks and authorized the Assessor and Collector of Water Rates to appoint and employ a man to fill said position subject to civil service regulations. Relator stood the civil service examination for this newly created position, received the highest grade, was certified for appointment and on August 6, 1913, was regularly and duly appointed Assistant Chief Inspector and as such assumed part charge of the inspection division of the waterworks system, a Mr. Long being Chief Inspector.

The evidence is that there was no difference in the duties of the chief inspector and the assistant chief inspector. They performed the duties of the office jointly. Shortly thereafter, however, Mr. Long seems to have left the water department, and when he did so, relator continued to perform the same duties as before, except that he was now in full charge of the inspection division, the Assessor and Collector of Water Rates having directed him to take full charge thereof. Under section 6, article 11 of the Charter, the Fire and Water Board appoints the Assessor and Collector of Water Rates, and he appoints, subject to Civil Service Laws, such employees under him as the Board authorizes.

Afterward the Fire and Water Board, on or before September 25, 1914, passed a resolution making a general schedule of the number, grade and compensation of the agents and employees in the water department. In the Inspection Division, this schedule made no provision for the position of either Assistant Chief Inspector or Chief Inspector, *by those names,* but did provide for one "Deputy Assessor" at a salary of $1200 per year and other employees. The City Council, by ordinance duly approved this schedule on September 25, 1914. This action on the part of the Fire and Water Board did not create a new office but merely changed the name of the position of Chief Inspector to that of Deputy Assessor. That the Fire and Water Board so recognized, it will be shown a little later on. That the Civil Service Commission regarded it as a mere change of title in the office is shown by the fact that on its card containing its record of Relator it noted "Title changed by ordinance to deputy assessor 9-25-14" which last was the date of the ordinance above mentioned.

On or prior to June 2, 1916, the Fire and Water Board again made provision as before for one "Deputy Assessor" but at a salary of $1500 per year, which was concurred in and approved by the Council on that date, and again the Civil Service Board noted on Rawlings'

record card "Salary raised by ordinance 6-2-16 to $1500." On or prior to June 19, 1917, the Fire and Water Board in a similar general schedule again provided for the inspection division one "Chief Inspector *or Deputy Assessor,*" this time raising his salary to $1800 per year which the Council approved on that date and likewise the same was noted by the Civil Service Board on relator's card. Again, on or before March 19, 1918, the Fire and Water Board, in another general schedule, provided for the inspection division one "Chief Inspector *or Deputy Assessor*" at a salary of $2160 per year and the raise in salary was noted as before by the Civil Service Board on its card of relator's record together with the date of the ordinance approving the schedule. Relator was recognized by all the authorities over him, or having aught to do with him, as Chief Inspector or Deputy Assessor; payrolls were made out, certified to and duly honored, bearing his name as deputy assessor; the inspection division was under the jurisdiction of the Assessor of Water Rates and hence the name of the position, which was not changed in the least as to duties, could be called, and was called, "Deputy Assessor" instead of Chief Inspector, and occasionally it was termed "Chief Inspector or Deputy Assessor."

Some time in June, 1918, relator was called into the Assessor's office and was told another man would be put in his place. Relator asked if there was any complaint of anything wrong with his work and was told there was not. That "it was politics," and that the Assessor had done all he could to prevent his discharge. We do not find any denial of this in the record, but no matter whether there is or not, the trial court found that relator "was removed and discharged from his said position because of political beliefs and opinions, and such discharge was in direct violation of the express provisions of the Charter of Kansas City." The returns to the alternative writ stated, and there was some

attempt to show, that relator was told at the time of his discharge that it was because a "practical plumber" was required, but it is conceded that no inquiry was made by the Assessor to ascertain whether or not relator had been or was a practical plumber.

Section 17 of Article 15 of the Charter requires a vacancy to be reported to the Civil Service Board, but there is no evidence that any such report of a vacancy in the chief inspectorship was made, nor was any vacancy reported when the position was named Deputy Assessor. However, after relator was discharged, the Fire and Water Board on June 18, 1918, adopted another schedule providing for one "Chief Inspector (Inspection Division)" at a salary of $2160 per year which was approved by ordinance of that date, and on the relator's card in the records of the Civil Service Board was endorsed "Position abolished by ordinance 6-18-18" when the city clerk so certified to the Civil Service Board. The evidence shows, and the trial court so found, that the duties of the position thus renamed "Chief Inspector (Inspection Division)" remained the same as those of Chief Inspector or Deputy Assessor. Indeed there was no attempt or effort whatever to affect or change the duties, and the trial court found that the "position of chief inspector or deputy assessor filled by relator prior to the 15th of June, 1918, and from which relator was wrongfully discharged, was not abolished by ordinance or ordinances of the common council of Kansas City," and that after the discharge of relator another was appointed who had the same work and duties as relator had when filling the position of Deputy Assessor or Chief Inspector.

The assessor, after the discharge of relator, filled the place by appointing another man; and some two or three weeks after relator's discharge, the new appointee was given a noncompetitive examination and a provisional appointment for sixty days and later he took the civil service examination and was certified by the Board to the position of Chief Inspector.

After his discharge on June 23, 1918, relator ''stayed around'' the office for several weeks, and for some months was led to believe by the assessor and a member of the water board that there was a chance of his being reinstated · and that they were doing what they could to bring that about or to make a place for him. When relator became convinced that there was no hope of the authorities reinstating him, this suit was brought on the 31st of March, 1919.

There can be no doubt, and there is indeed no question, but that article 15 of the Charter adopted by the *people* of Kansas City, has provided a complete Civil Service Law governing the ·tenure of positions held by city employees, including the one to which relator seeks to be reinstated. Nor is it necessary to state the object and purpose of the Civil Service Laws, or to reiterate that such laws are for the good of the public service. That is already firmly established. [Gracey v. St. Louis, 213 Mo. 384, 393; State ex rel. v. Kansas City, 206 Mo. App. 17, 25.] It follows, therefore, that in a case like this which has to do with the application and enforcement of the law, courts have only two main questions to determine, namely: (1) Does relator, or the one complaining, properly come within its terms, that is to say, did he hold the office governed by its provisions; and (2) was he discharged therefrom in violation of that law? And in deciding the latter of these two questions, no slavish subjection to *mere form,* whereby a false appearance is given to things, must be adhered to, but, after it has been once ascertained that the relator or complainant was the *holder* of the position the tenure of which is under the protection of said law and in question, then the *real substance* of what was done in ousting him therefrom should be looked at, to see whether or not the law has been violated. If this course is not pursued, then the Civil Service Law is left a helpless prey to whatever device, or meticulous method of evading it, can be devised by ingenious minds.

In this case there is no claim whatever that relator was not performing the duties of the place properly. On the contrary, the evidence shows he was an exceedingly efficient, capable and faithful employee. He was not discharged for any reason of this kind but solely for political reasons, either to give room for a man of opposite political faith or in order to favor some other individual of the same political faith. And he was told it was because of politics that he was discharged. In this connection, it will not avail anything to say that the assessor, who was the discharging officer, could not, by his statement in that regard, bind the authorities or board above him. He was the appointing and discharging officer, subject, of course, to the civil service regulations; what he said in that regard certainly stands as the true reason when no attempt was made in any way to show that such was not the real reason or that there was any other valid reason.

With these matters out of the way, the important inquiry first to be settled is, Was relator *in* the position, or the *holder* thereof, in such sense as to entitle him to be reinstated therein. It is, of course, well settled that, in mandamus, a relator must show a *legal right* to that which he asks, else he must fail in his suit. [26 Cyc. 263.]

It is conceded that relator's entrance into the city's employ in the water department as Inspector of New Plumbing, and afterwards as Assistant *Chief* Inspector, were in due and regular course under the civil service regulations. He then was *Assistant* Chief Inspector, and Long was Chief Inspector and head of the inspection division. Long, for some unknown reason, left the department and relator, who theretofore had been performing the same duties as Long and jointly with him, performed all of said duties and was directed to do so by the Assessor of water rates in control of that portion of the Department. But on September 25, 1914, in a general schedule adopted by the Water Board and approved by ordinance, no provision was made for an

Assistant Chief Inspector, and instead of the position at the head of the inspection division being called Chief Inspector, it was denominated "Deputy Assessor." Relator did not take any examination for the position of chief inspector in which he was placed upon the withdrawal of Long. Appellants' position is that the water board alone, and not the Assessor of water rates, had the power to appoint relator to the chief inspectorship and as he did not stand an examination therefor, he was never legally appointed thereto but remained *Assistant* Chief Inspector while *Acting* Chief Inspector; and when the water board, with ordinance approval, provided the general schedule of employees and their pay, of date of September 25, 1914, in which no office of *Assistant* Chief Inspector was provided for, but only the office of Deputy Assessor corresponding to that of Chief Inspector, this abolished the office of Assistant Chief Inspector the only office relator legally held, and thereafter he, in law, held no office in the Department, but, although performing the duties of Chief Inspector and later the same duties under the name of Deputy Assessor, he was merely a *de facto* or acting officer. If he was merely a *de facto* officer, of course he could have no right to be reinstated by mandamus. Two considerations bear upon the correctness of the view that he was only a *defacto* officer. First, it assumes that an Assistant Chief Inspector, performing the same *duties* as and acting *jointly* with the Chief Inspector, must stand an examination before he can legally be invested with the office of Chief Inspector. If he must do this, what becomes of the principle of *promotions* enjoined and fostered by the Civil Service Law? Again, it would seem from the course pursued by the water board, that it wanted the Assessor to promote or continue relator as "Chief Inspector *or Deputy Assessor*" just as it directed him to make an appointment to the assistant chief inspectorship when this last named office was *created*. The board certainly never contemplated that when Long left the Department,

or when the schedule provided for a position called Deputy Assessor instead of Chief Inspector, there was a vacancy to be filled by examination or appointment, for it never in any way indicated any such thought or intention; the course pursued by all the persons and bodies in authority is directly to the contrary.

Furthermore the Charter provides that, where it is practicable, vacancies shall be filled by *promotion* according to rules prescribed by the Civil Service Board. [Sec. 15, Art. 15, Charter.] And said board adopted a rule that vacancies should be filled "by promotion from *among persons who have held positions in the same class and in the same department* in which the vacancy exists or is anticipated. Promotion shall be based on ascertained merit, in determining which records of efficiency and seniority of service shall be considered. Any increase in salary shall be considered a promotion if the board so determines." (Italics ours.) Section 17 of article 15 of the Charter requires notice of all appointments, *promotions,* resignations or vacancies to be given the Civil Service Board, and this notice was evidently given, since the board had record of all that was done with regard to relator and the office he filled. The Civil Service Board's record was one that was required by law to be kept. [Sec. 9, Art. 15, Charter.] Under the provisions of the Charter the Civil Service Board had to certify appointments to the Comptroller, and he was *forbidden to issue warrants* to anyone whose name had not been so certified. The board did certify payrolls with relator's name as deputy assessor thereon and the Assessor testified that the title of the office was Chief Inspector or Deputy Assessor. Consequently the Civil Service Board had considerably more to do with the question of whether relator was rightfully in office than merely to examine him in the first place and put him on the eligible list. Besides these manifold duties in regard to this particular office, the board was charged with the administration of the Civil Service Law and the

correction of abuses. [Sec. 9, Art. 15, Chapter.] It would seem from all this that the ordinary presumption, as to the regularity of relator's advancement from the assistant chief inspectorship to the chief inspectorship and his advancement to, and continuance in, the same position under the title of Chief Inspector or Deputy Assessor, would apply. The ordinary principles relative to the admissibility and weight of evidence apply in mandamus the same as in other suits. [2 Spelling on Inj. (2 Ed.), sec. 1693.] And so also do the general rules governing presumptions in evidence. [26 Cyc. 476.] The presumption is that these boards and officers properly and regularly performed their duties (10 R. C. L. 880), and there is no evidence that in thus promoting relator, there was any illegality. [10 R. C. L., p. 881.] The action of the Civil Service Board in approving the payrolls with relator's name thereon holding such office amounted to a finding that no examination was necessary in his case. [McArdle v. Chicago, 172 Ill. App. 142, 154.] The reason for an examination did not exist in his case in order to promote him from Assistant Chief to Chief Inspector. He was performing the same duties already and his proficiency and fitness, as well as his entrance upon the assistant position he held, was already proven and certified to. The Civil Service Board has a wide discretion with regard to the manner of performing its duties and exercising its powers, and courts should not interfere with their method of doing things unless they are clearly abusing their discretion and their acts are illegal. [Pratt v. Rosenthal, 169 Cal. 336, 339.] The promotion of relator was in accordance with the principle of the Civil Service Law enjoining and encouraging promotions, he was promoted by officers having that authority, and not only the Water Board but the Civil Service Board knew of it and acquiesced in it, and no illegality has been pointed out. Moreover, the water board and city council repeatedly increased his pay, and the city clerk, pursuant to his duty under section

17, article 15 of the Charter, notified the Civil Service Board and it authorized the payment of his salary as thus increased, and there is nowhere any requirement that for increase or pay, or promotion in rank of positions necessarily the same in the duties required, any examination was necessary. As said in McArdle v. Chicago, supra, 1. c. 152, "To promote is, according to Webster's International Dictionary, 'To exalt in station, rank or honor; to elevate, raise, prefer, advance.' As applied to the Civil Service Laws of New York, the courts of that State have defined the term to mean the advancement of an official or employee to a higher position who had previously been appointed to one of inferior degree (McGuire v. Byrnes, 70 Hun, 760);" and, as in that case so in this, when the salary was raised at various times and the raises duly reported to the Civil Service Board, and it did not require any additional examination but approved and certified relator's payrolls, this evinced, in the most unqualified manner, not only that relator was rightfully in the position, the salary of which was being paid to him, but it "amounted to a finding that the Commission was not of the opinion that the change in salary involved such a change in duties as to require an additional examination. Such a determination involved the judgment, opinion and discretion of the Commission, and is not subject to review here. [County of St. Clair v. People, 85 Ill. 396; Kelly v. City of Chicago, 62 Ill. 279; People v. Dental Examiners, 110 Ill. 180; City of Chicago v. People, 114 Ill. App. 145-155." (locus citatus, p. 154).]

It must also be remembered that the opportunity for promotion is one of the highest incentives for good service on the part of the employee; that is why the Civil Service Law enjoins the practice; and consequently it was not only within the discretion of the water board to promote, and the Civil Service Board to approve the advancement of, this employee who was not only capable and efficient but who already, as *assistant*, was perform-

ing the duties acceptably and well, but these boards were *obeying the Civil Service Law* in so doing. And, in such instance, it was not incumbent upon relator to do any act to entitle him to hold the higher office; that was a matter solely for the boards to attend to; all relator had to do was to *obey orders,* and when the Assessor directed him to take charge, the presumption in that the water board authorized such to be done, specially as both boards afterward acted as if such was the case. The fact that relator testified that he "assumed" the office when "directed" to do so, is not an admission that such was a mere assumption without authority, certainly not a conclusive statement to that effect.

As to the office being called at one time Chief Inspector and afterward Deputy Assessor and then "Chief Inspector or Deputy Assessor," it is manifest that such was a mere change in the name of the office and not the abolition of one and a creation of another. Appellants contend that, under the Civil Service Law in the Charter, heads of departments can remove without cause and the discharging officer is not required to give "a written statement setting forth in detail the reasons therefor," which quotation is from section 10, article 15 of the Charter enjoining that very thing. We will not enter into an analysis or discussion of the process by which appellants seek to uphold the above-mentioned contentions. The decisions are to the contrary. [Gracey v. St. Louis, 213 Mo. 384, 395; State ex rel. v. Kansas City, 206 Mo. App. 17, 24.] And a written statement of the reasons must be given. [State ex rel. v. St. Louis, 90 Mo. 19, 22; State ex rel. v. Maroney, 191 Mo. 531; State ex rel. v. Board, 95 Ohio St. 276, 287; State ex rel. v. Sullivan, 58 Ohio St. 504.] See, also, on both features of the above contentions, Gregory v. Kansas City, 244 Mo. 523, 546; State ex rel. v. City of Seattle, 83 Wash. 91, 93; 1 Dillon on Munic. Corp. (5 Ed.), p. 685. An employee who is removable for cause is entitled to be notified and heard. [State ex rel. v. Walbridge, 119 Mo.

383, 395; Hallgren v. Campbell, 82 Mich. 255; Ruth v. State, 158 Ind. 242.] The power to remove must be strictly pursued. [2 Dillon on Munic. Corp. (5 Ed.), sec. 468; Truitt v. Philadelphia, 221 Pa. St. 331, 337.]

The judgment is affirmed. The other judges concur.