The People of the State of Illinois ex rel. Arthur Naylor, Appellee, v. Barney Cohen et al., Appellants.

Gen. No. 36,968.

Opinion filed February 5, 1934.

OTTO KERNER, Attorney General, for appellants; GEORGE S. LAVIN, Assistant Attorney General, of counsel.

PRESCOTT, BURROUGHS & TAYLOR, for appellee; PATRICK B. PRESCOTT, JR., of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by Barney Cohen, director of labor of the State of Illinois, and other State officials, respondents, from a judgment in favor of petitioner, Arthur Naylor, in an action of mandamus to restore him to his position under the civil service laws of the State.

The judgment directed that respondents recognize and restore Naylor as placement clerk in and under the classified civil service and that he be placed on the pay roll of the department of labor; that he be paid the salary appropriated by the General Assembly for that position, and that he should be kept upon the pay roll as "Placement Clerk" until retired or removed as provided by law.

The petition of relator was filed January 6, 1933. A general demurrer by respondents was overruled and a special demurrer as to certain special items in the bill was sustained. The relator thereupon filed an amended petition, which respondents answered. Relator filed a replication to the answer, to which respondents rejoined with a *similiter*. The cause was heard by the court without a jury and judgment was entered in favor of petitioner, as heretofore stated.

There is practically no dispute as to the facts disclosed by the record, which in brief are that on January 18, 1919, Naylor took an original entrance examination under the civil service law for the position of "department clerk, rank 2." He passed, was placed on the eligible list and was certified to the Chicago free employment office in the department of labor effective May 7, 1919. June 21, 1919, he took an original entrance examination for the classification of "Placement Clerk" and qualified. The parties are agreed that he served as "Placement Clerk" until September 1, 1928, on which date by direction of Cohen, then, as now, director of labor, he began to perform the duties of an assistant superintendent of free employment. The department superintendent, Mr. Oberhart, testified:

"In his (petitioner's) position as Placement Clerk he assumed additional duties for I had to have somebody else to stay if I was not there or something. We had to have somebody in charge when I was not

there. Those additional duties were not anything more than he was performing as a Placement Clerk. He was acting in that capacity as Assistant Superintendent just to have that little more authority than the other fellow. He remained at the same desk, did the same work and performed the same duties. He did not make an application for this promotion. I am responsible for his promotion. . . .

"All that I gave him as head of that department was just additional duties to perform. It was a matter of $5 a month."

At that time Cohen signed a paper designated "request for 30 day permit." It was directed to the State civil service commission and was in substance a request made pursuant to section 10, paragraph 4 of the State Civil Service Law, Cahill's St. ch. 126a, ¶ 12, certifying that a necessity existed for the employment of a person to perform the duties of assistant corporation superintendent at a compensation of $150 a month in the labor department, Chicago free employment office; that the employment was of a temporary and transitory nature; that the work to be performed was assisting and would continue 30 days. Cohen also notified the civil service commission that the appointment had been made with authority of the commission. These requests were renewed and granted each month, so that from September 1, 1928, until July 31, 1932, the relator continued to perform services under this kind of temporary permit.

July 27, 1932, the general superintendent of the department, Charles R. Palmquist, telephoned the department superintendent Oberhart and directed that Naylor be discharged from service, and thereupon Oberhart, as he says, beckoned to Naylor and said, "I guess you are through, fired. I am telling you, you can go now if you want to." Naylor replied, according to Oberhart, "No, I will continue my time out and stay the rest of the time until the 31st of August."

Oberhart says that he asked Palmquist what was the reason and Palmquist replied, "That is orders." Naylor, when told he was fired, handed in his key, took his personal things from the office and left. He made an unsuccessful effort to see Cohen, went to his office, but without avail, and wrote a letter to him without receiving any response. He never received any notification that his services as "Placement Clerk" had been terminated. He says he had no information as to the cause of his discharge nor as to whether it was occasioned by political, racial or religious reasons. No complaint had ever been made as to the work performed by him; he was never called before the civil service commission or the department officials nor charged in any way with any negligence or any wrongdoing. He has never made any application to the commission to be reinstated or protected in a civil service status as placement clerk. The records of the civil service commission do not show that he was dismissed or removed by the commission. A card in the original records kept by the civil service commission simply shows "left the service 7-31-32."

Paragraph 14 of Cahill's St. ch. 126a (Smith-Hurd's Ill. Rev. Stats. 1931, ch. 24½, par. 14, sec. 12) provides:

"No employee in the classified civil service of the State shall be removed, discharged or reduced in rank or pay by the appointing officer, except for just cause. The term 'just cause' as used in this section—shall mean any cause which is detrimental to the public service other than political, racial or religious.

"In every case of removal, discharge or reduction, a statement of the cause therefor shall be set forth in writing, which statement shall be in duplicate, and shall be signed by the appointing officer. One copy of said statement shall be delivered personally to the employee and the other copy of said statement shall

be filed in the office of the Civil Service Commission, with a notation thereon showing proof of service of a copy of said statement upon the employee. Upon the filing of a copy of said statement with the notation aforesaid, in the office of the Civil Service Commission, the removal, discharge or reduction shall immediately become effective.

"Whenever an employee who has been removed, discharged or reduced shall file with the Civil Service Commission, within five days after his removal, discharge or reduction, a statement in writing, alleging that his removal, discharge or reduction was made for political, racial or religious causes, and that he believes that upon a hearing he will be able to establish such a fact, it shall be the duty of the Commission to order a hearing. The time and place of such hearing shall be fixed by the Commission and due notice thereof given to the appointing officer and the employee.

"Upon such hearing the Commission shall determine and decide whether or not the removal, discharge or reduction was made for political, racial or religious causes, and the Commission shall have no jurisdiction or authority to review, consider or determine any other question."

The statute further provides in substance that if upon the hearing the commission finds that the removal, discharge or reduction was made for political, racial or religious causes, it shall enter an order reinstating the employee in his former position and directing the payment of all back salary due; that if the finding of the commission is otherwise, it shall enter an order to that effect and the removal, discharge or reduction shall be final.

Respondents contend that by petitioner's repeated acceptances of 30-day appointments to the position of assistant superintendent, he is now precluded and estopped from being reinstated to the position of

placement clerk; that he was at the time of his removal only a temporary appointee and therefore not entitled to any written notice of discharge as provided by the statute. They further contend that as he failed to file a petition with the civil service commission within five days after removal as required by statute, he has not exhausted his remedy under the statute by applying to the civil service commission for reinstatement, and that his failure to file this petition clearly indicates his personal knowledge that he was not in the classified civil service of the State of Illinois. Apparently, respondents base their defense entirely upon the theory that through the acceptance of the 30-day appointments relator Naylor had abandoned his status as a civil service employee and his position as placement clerk, and their case must stand or fall with the validity of that contention.

There is no claim of any formal resignation or abandonment, but it is argued that one arises by implication of law, and in support of the contention respondents cite and quote from 46 Corpus Juris 980, sec. 137. The quotation in the brief is deleted. When the full statement of the text is considered it does not sustain respondents' contention. It is as follows:

"Abandonment is a species of resignation, but differs from resignation in that resignation is a formal relinquishment, while abandonment is a voluntary relinquishment through nonuser. Although the intention may be inferred, an office cannot be abandoned without an intention by the officer to relinquish it, and such a relinquishment is not produced merely by a temporary nonuser or neglect of duty."

Webster's New International Dictionary defines the word "abandon" as follows:

"To relinquish or give up with the intent of never again resuming or claiming one's rights or interests in; to give up absolutely; to forsake entirely; to re-

nounce utterly; to relinquish all connection with or concern in; to desert."

We search this record in vain for facts from which such intention on the part of this petitioner might be implied. He did not relinquish or give up the duties of his place. On the contrary, the evidence shows that during all the time, he continued to perform those duties, as well as other duties cast upon him. Respondents in their brief refer to the 30-day permits as requests for leaves of absence, and say in substance that this record shows clearly that petitioner received continuous leave of absence for 30-day periods from August 1, 1928, to the date of his discharge July 31, 1932. The rules of the civil service commission are in evidence, and the subject of leave of absence is covered by section 2 of rule 7. It provides:

"Subject to the approval of the commission leave of absence without pay may, with right to return to former position, be granted by the appointing officers."

The reasons for leave of absence are stated to be physical disability or some special reason "which, in the judgment of the Commission, is sufficient to constitute good reason for giving such leave." The rule further provides that leave with right to return shall not be given for a period to exceed one year except when engaged in military or naval service in time of war; that the acceptance of another position or engaging in other employment by the employee while on leave of absence, "except with the knowledge and approval of the commission," shall be deemed a resignation. The rule further provides that failure of an employee to report at the expiration of leave of absence shall be sufficient to separate the employee from the service.

It is apparent, we think, within this rule, that these permits did not have the qualities of a leave of absence.

Relator here did not ask to be relieved from the work he was doing nor for permission to be absent from it. On the contrary he continued to do the same work he had been doing, sat at the same desk and was subject to the same superior officers. In substance, the only change made was that he took on some additional duties in the same department. The transaction would seem to have been more like a transfer than a leave of absence. The same rule provides that transfers may be made from one position to another in the same grade and in the same or different departments by direction of the heads of the departments concerned and with the approval of the commission; that transfers also may be made from one position to another, not in the same grade, where the duties are closely connected and experience in one fits the employee for the other, but in each such case a statement in writing of the circumstances shall be submitted to the commission, showing why the transfer is desired and showing the approval of both department heads concerned.

As the work Naylor continued to perform was not in a different department, it could not be consistently defined as a transfer. As already stated, the sum and substance of it all was that with the consent and at the request of his superiors, and with the consent of the civil service commission, he was permitted to do additional work in the same department, for which he received additional compensation of $5 a month.

There is a letter in the record written by Naylor to the civil service commission, in which in substance he asked that the temporary promotion be made permanent and stated he was performing the same duties as assistant superintendent as he did in his former position of placement clerk, and that he was eligible to the permanent appointment and certification through civil service examination. Respondents argue an intention to abandon his position, from this letter. We

find nothing in the letter from which it might be inferred that he had relinquished or abandoned the position of placement clerk. On the contrary he positively asserts in this letter his status under civil service. The theory of respondents, therefore, that relator lost his civil service standing by accepting 30-day permits to do additional work at the request of his superiors cannot be sustained.

Respondents say that relator was a temporary appointee. That may in one sense be true; he was that, but more than a temporary appointee. He was a permanent appointee with a civil service status, who, at the request of his superiors and with the consent of the civil service commission was temporarily doing additional work. It would be contrary to the spirit and purpose of the civil service law to hold that an employee who through all the years had continued to give faithful service should thereby subject himself to arbitrary discharge as having abandoned his work. It follows that if he was to be deprived of civil service status, written notice should have been given as provided by the statute, Cahill's St. ch. 126a, ¶ 14. The facts are not unlike those which existed in *McArdle v. City of Chicago,* 172 Ill. App. 142, also 216 Ill. App. 343, where it was held that the assignment of additional duties to a cement tester in the employment of the city without change in the quality of the duties he was to perform could not operate so as to deprive him of the position he held under the civil service law.

Respondents cite *People ex rel. Thornton v. Whealan,* 264 Ill. App. 28. In that case the rules of the civil service commission of Cook county provided that where an employee requested a leave of absence without pay and the head of the department and the commission approved, the commission should authorize the head of the department to grant the same for a period of not to exceed 90 days, and that the commis-

sion might in its discretion grant renewals of such leave of absence without pay, provided the total period of continuous leave should not exceed one year. The record showed that the petitioner had been given a leave of absence on March 5, 1929, for a period of 90 days; that it was renewed on June 3, 1929, September 1st, and November 30th for like periods of 90 days; that on March 6, 1930, relator's name appeared on the pay roll for one day and he was then granted leave for 90 days beginning March 6, 1930; that this leave was renewed for 90 days beginning June 3, 1930, again for a like period beginning September 1, 1930, and for a like period beginning November 30, 1930; that his name appeared on the pay roll during the month of February and two days during March, 1931. The answer of respondents asserted that this practice was a mere subterfuge and device to defeat or nullify the rules of the civil service commission; that it was not a bona fide and actual return to service, and that such practice, if permitted, would work an injustice on other civil service employees who would be removed to make a place for the petitioner who cared so little for his position. The only answer of the petitioner was that these leaves of absence were legal, and a number of witnesses were produced in his behalf who testified that they, too, were civil service employees and had been given similar leaves of absence. We there said:

"Thornton did not testify on the hearing and it is obvious from this record that he merely returned for one day with no intention of taking up his work again at the institution, but only for the purpose of again going through the form of securing further leaves of absence." The judgment of the circuit court awarding the writ was reversed. It seems unnecessary to point out the clear distinction between that case and this one.

Respondents also contend that petitioner is not entitled to mandamus because he did not exhaust his remedy under the statute by applying to the civil serv-

ice commission for reinstatement. This question was raised by the respondents on special demurrer which was overruled as to that point, and they answered over, which would indicate that the question was waived. *Illinois Cent. R. Co. v. People,* 143 Ill. 434; *People ex rel. Mason v. Board of Supervisors of Vermilion County,* 171 Ill. App. 46. However, we think the contention is without merit. The evidence here shows without contradiction that petitioner had no reason to believe that his removal was for racial, religious or political causes. That being the case, the civil service commission would seem to be without jurisdiction to consider the matter. Respondents cite *Osborne v. Bradford,* 346 Ill. 464, where it was held in substance that a petitioner who complained was not entitled to mandamus because of his failure to so apply to the civil service commission. However, the petition in that case (unlike this) expressly averred that the cause for removal was political.

Respondents also contend that petitioner is guilty of laches. This contention is based on the theory that petitioner lost his status as a civil service employee when he began to perform the duties of assistant superintendent under the 30-day permit. What we have already said disposes of this contention. It might be added that this point was also decided against respondents upon special demurrer, and that they waived it by answering over. The contention is wholly without merit. Petitioner was out of civil service standing only a little more than five months before he actually brought suit. Under such circumstances he is not guilty of laches. *People ex rel. Qualey v. City of Chicago,* 203 Ill. App. 191; *People ex rel. Aeberly v. City of Chicago,* 240 Ill. App. 208.

For the reasons indicated the judgment of the trial court is affirmed.

*Affirmed.*

O'CONNOR and McSURELY, JJ., concur.